EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* IGNACIO GÓMEZ INCERA, acusado y apelante.

*Número:* CR-67-156 *Resuelto:* 6 de mayo de 1969

---

250

*José M. Tejada,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Juan José Ríos Martínez, Procurador General Auxiliar,* abogados en El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

La identificación del acusado es una fase esencial en el procedimiento criminal. *United States* v. *Wade,* 388 U.S. 218 (1967); *Gilbert* v. *California,* 388 U.S. 263 (1967); *Stovall* v. *Denno,* 388 U.S. 293 (1967); *Simmons* v. *United States,* 390 U.S. 377 (1968); *Foster* v. *California,* 37 U.S.L. Week 4281 (1969).

En los casos de *Wade* y *Gilbert* el Tribunal Supremo de los Estado Unidos considera extensamente el problema de la identificación. Hace un estudio de este aspecto del proceso criminal y establece que el acusado tiene derecho a la asistencia de abogado al ser presentado para identificación en unión a otras personas. Pero en el caso de *Stovall* va más lejos y considera que la confrontación llevada a cabo mostrándole al testigo una sola persona—necesariamente sobre la cual de acuerdo con la policía, recae la responsabilidad del acto que se investiga—le niega al acusado el debido proceso de ley. En *Foster* v. *California* expresó el Tribunal Supremo de los Estados Unidos en el segundo escolio que "[l]a confiabilidad de una identificación hecha por un testigo ocular admitida correctamente, al igual que la credibilidad de otras partes del caso del fiscal es una cuestión para el jurado. Pero es la norma establecida en *Wade, Gilbert* y *Stovall,* que en algunos casos los procedimientos que llevan a una identificación ocular, pueden estar tan viciados que como cuestión de derecho hagan constitucionalmente inadmisible la identificación." En idénticos términos se expresó la Corte da Apelaciones de Nueva York en *People* v. *Ballot,* 233 N.E.2d 103 (1967): "En ausencia de circunstancias que obliguen a recurrir a tal procedimiento, la práctica de que un testigo secretamente observe, para propósitos de identificación, sola-

mente al único sospechoso que la policía tiene bajo su custodia por el crimen, puede ser 'tan innecesariamente sugestiva y conducente a una identificación errónea' e irreparable que conlleve a una negación del debido procedimiento de ley." En Crawford, *Due Process in Extra Judicial Identification*, 24 Wash. & Lee L. Rev. 107 (1967) se expuso:

"Una confrontación individual es marcadamente sugestiva de culpabilidad porque 'las emociones de la víctima . . . crean una predisposición de creer lo peor de la persona traída ante él como el probable ofensor, especialmente cuando no hay un sospechoso alterno.' En relación a confrontaciones, el Profesor Wigmore manifiesta 'no existe excusa para exponer el destino de un hombre inocente con tales métodos anticuados y torpes; una identificación bajo tales circunstancias resulta prácticamente sin valor.' "

Ver además *Crume* v. *Beto*, 383 F.2d 36 (5th Cir. 1967); *People* v. *Caruso*, 436 P.2d 336 (Cal. 1968); *People* v. *Pedercine*, 63 Cal. Rptr. 873 (Calif. C.A. 3d Dist. 1967); *People* v. *Irvin*, 70 Cal. Rptr. 892 (Calif. C.A. 1st Dist. 1968); *People* v. *Espinoza Menchaca*, 70 Cal. Rptr. 843 (Calif. C.A. 2d Dist. 1968).

■ No puede haber un juicio justo e imparcial si no se garantiza debidamente la forma de identificar a la persona que se acusa de la comisión de un crimen. Los mayores extravíos en la administración de la justicia lo ocasionan los errores en la identificación de los acusados. Se apunta que en un estudio de sesenta y seis casos resueltos, en veintinueve de ellos se identificó erróneamente al acusado. Ver Borchard, *Convicting the Innocent* (Garden City, 1932); Williams & Hammelmann, *Identification Parades-I*, 1963, Crim. L. Rev. 479.

En el último artículo citado se expresa:

"Las razones del peligro de esta clase de evidencia no son difíciles de descubrir. Evidencia de identificación es la evidencia de opinión por excelencia, es la clase de prueba de la cual el

derecho inglés, siempre se ha protegido con singular cuidado. Como los Jueces Evatt y MacTiernan comentaron en el caso australiano de *Craig*, 'Un testigo honesto que dice "El acusado es el hombre que guiaba el carro," lo que aparenta ser una simple, clara e impresionante aseveración, realmente está asegurando: (1) que él observó al conductor, (2) que lo que observó, quedó grabado en su mente, (3) que él todavía retiene esta impresión original, (4) que tal impresión no ha sido afectada, alterada o reemplazada, por las fotografías publicadas del acusado, y (5) que el parecido entre la impresión original y el acusado es suficiente para concluir que no es un parecido sino una identificación.' La complejidad de esta controversia se confunde cuando al testigo se le pregunta, como comúnmente se hace, ya sea por el fiscal, o por el juez: '¿Ve usted hoy en corte el hombre de quien usted habla?' La contestación a esta pregunta, con un gesto en dirección al banquillo de los acusados es una conclusión esperada: resulta poco plausible e impresiona al jurado, y sin embargo la cuestión de si el testigo reconoce ahora al acusado como el criminal es de tan poca fuerza probatoria que sería mejor que no se le preguntara, excepto en el contexto de otras tres preguntas: ¿cuándo y en qué circunstancias reconoció el testigo por primera vez al acusado como el hombre?; ¿si tuvo alguna dificultad en reconocerlo?; ¿y por qué rasgos lo identificó? Aún estas preguntas adicionales puede que no salven esta clase de evidencia del peligro de confundir a los jurados, pero al menos brindarán alguna oportunidad de revelar faltas en la identificación."

Ver además Gorphe, *"Showing Prisoners to Witnesses for Identification"*, 1 American Journal of Police Science, 79 (1930); *United States* v. *Wade*, supra, a la pág. 228.

■ Conociendo los errores que se pueden cometer en la identificación de una persona que sólo ha sido observada por tiempo limitado, en circunstancias de tensión y nerviosismo que necesariamente afectan el sentido de percepción, esta fase del proceso investigativo debe rodearse con las salvaguardas necesarias que eviten que se malogre la justicia. No se debe depender de la identificación que pueda hacer en corte el día del juicio. La identificación en el juicio esta-

ría maculada por los vicios de que adoleció la llevada a cabo en la etapa investigativa. Ver *People* v. *Caruso*, supra; IV Wigmore, *On Evidence*, Sec. 1130 (ed. 1940). Los testigos ya habían determinado que el acusado era el responsable. La identificación durante el juicio resulta una mera formalidad. Como se expresó en el artículo escrito por Williams and Hammelmann, *supra*, y que se cita en *Wade* a la pág. 229: "La experiencia ha demostrado que una vez un testigo señala al acusado en la confrontación, no es de esperarse que se retracte más tarde, de tal manera que en la práctica la controversia de la identificación puede (en la ausencia de otra evidencia relevante) para todos los propósitos prácticos ser determinada en ese momento, antes del juicio. . . ."

Consciente que el acto de la identificación es uno crítico para el acusado se han establecido reglas para llevarlo a cabo. En el caso de *Wade*, el Tribunal Supremo de los Estados Unidos recoge en un escolio la propuesta del Profesor Murray que aparece en su artículo *The Criminal Lineup at Home and Abroad*, (1966) Utah L. Rev. 610, 627–628. Propone lo siguiente:

"Casi, si no todos, los ataques al proceso de confrontación se podrían evitar por un estatuto uniforme modelado a base de las mejores características de los ordenamientos civiles. Cualquier estatuto propuesto deberá proveer para el derecho de asistencia de abogado durante cualquier confrontación. Debe disponerse para que cualquier persona, ya sea la víctima o un testigo, esté obligada a dar una descripción del sospechoso antes de que observe a cualquier persona arrestada. Se debe requerir un récord escrito de esta descripción firmada por el testigo. Este récord escrito deberá estar disponible para ser inspeccionado y copiado por el abogado defensor antes del juicio y para su uso en el juicio para corroborar la certeza de la identificación hecha durante la confrontación y durante el juicio.

Este estatuto ideal requeriría por lo menos seis personas en adición del acusado en la rueda de confrontación, y estas personas deberán ser aproximadamente de la misma estatura, peso, color de la piel y del pelo y de la misma contextura física que

el sospechoso. En adición todos estos hombres deben estar vestidos de la forma más similar posible. Si se usó durante el crimen una vestidura distintiva, no se debe forzar el sospechoso a vestir una ropa similar durante la confrontación a menos que se vista de igual forma a todas las otras personas. Debe ser mandatorio un informe escrito de los nombres, direcciones y detalles descriptivos de las otras personas en la rueda de confrontación, y de todo lo que aconteció, durante la identificación. Este informe incluirá todo lo establecido por el testigo durante esta etapa, incluyendo cualesquiera razones dadas por él, respecto a qué características, etc., motivaron su reconocimiento.

Este estatuto debe permitir exámenes para identificación de la voz, exigiendo a cada persona en la confrontación, que repita frases inocuas idénticas, y no será permisible el forzar el uso de palabras alegadamente usadas durante el acto criminal.

El estatuto deberá prohibir a la policía el sugerir a cualquier observador que una o más de las personas en la confrontación han sido arrestadas como sospechosas. Si más de un testigo va a hacer una identificación, cada testigo debe ser requerido para que lo haga separadamente y debe prohibírsele hablar con otro testigo hasta que todos ellos hayan terminado el proceso.

El estatuto debe requerir el uso de cámaras de movimiento y grabadoras para grabar el proceso de confrontación en aquellos estados que estén en condiciones económicas para proporcionar estos artefactos. Finalmente, este estatuto debe disponer que cualquier evidencia obtenida como resultado de una violación de este estatuto deberá ser inadmisible."

Ver además Joseph, *Due Process at the Lineup*, 28 La. L. Rev. 259 (1968).

Es interesante apuntar que la Ley Española de Enjuiciamiento Criminal disponía en su Art. 369 que "[l]a diligencia de reconocimiento se practicará poniendo a la vista del que hubiere de verificarlo la persona que haya de ser reconocida, haciéndola comparecer en unión con otras de circunstancias exteriores semejantes. A presencia de todas ellas, o desde un punto en que no pudiere ser visto, según al juez pareciere más conveniente, el que deba practicar el reconocimiento manifestará si se encuentra en la rueda o grupo la

persona a quien hubiese hecho referencia en sus declaraciones, designándola, en caso afirmativo, clara y determinadamente. En la diligencia que se extienda se harán constar todas las circunstancias del acto, así como los nombres de todos los que hubiesen formado la rueda o grupo." ([1]) Ver además la forma

([1]) El Código de Procedimientos Penales de México es muy explícito. Contiene el Capítulo X que dispone:

"Art. 217.—Toda persona que tuviere que referirse a otra en su declaración o en cualquier otro acto judicial, lo hará de un modo claro y distinto que no deje lugar a duda respecto a la persona que señale, mencionando su nombre, apellido, habitación y demás circunstancias que puedan darla a conocer.

"Art. 218.—Cuando el que declare ignore los datos a que se refiere el artículo anterior, pero manifieste poder reconocer a la persona si se la presentan, se procederá a la confrontación. También se practicará ésta, cuando el declarante asegure conocer a una persona y haya motivo para sospechar que no la conoce.

"Art. 219.—Al practicar la confrontación, se cuidará de:

"I. Que la persona que sea objeto de ella no se disfrace ni se desfigure, ni borre las huellas o señales que puedan servir al que tiene que designarla;

"II. Que aquélla se presente acompañada de otros individuos vestidos con ropas semejantes y aun con las mismas señas que la del confrontado, si fuere posible, y

"III. Que los individuos que acompañan a la persona que va a confrontarse, sean de clase análoga, atendidas su educación, modales y circunstancias especiales.

"Art. 220.—Si alguna de las partes pidiere que se tomaren mayores precauciones que las prevenidas en el artículo anterior, podrá acordarlas el juez, siempre que no perjudiquen la verdad ni aparezcan inútiles o maliciosas.

"Art. 221.—El que deba ser confrontado, podrá elegir el sitio en que quiera ser colocado entre sus acompañantes a esta diligencia, y pedir se excluya de la reunión a la persona que le parezca sospechosa. Queda al arbitrio del juez acceder o negar la petición.

"Art. 222.—La diligencia de confrontación se preparará colocando en fila a la persona que vaya a ser confrontada y a las que la acompañen. Se tomará al declarante la protesta de decir verdad y se le interrogará:

"I. Si persiste en su declaración anterior;

"II. Si conocía con anterioridad a la persona a quien atribuye el hecho, si la conoció en el momento de la ejecución del que se averigua, y

"III. Si después de la ejecución del hecho la ha visto, en qué lugar, por qué causa y con qué motivo.

"Art. 223.—Se conducirá entonces al declarante frente a las personas

propuesta por Wigmore en su obra sobre evidencia, Vol. III, Sec. 786(a), pág. 163.

En *Stovall* v. *Denno*, supra, y *Simmons* v. *United States*, 390 U.S. 377 (1968), el Tribunal Supremo de los Estados Unidos, luego de señalar qué defectos en el procedimiento para la identificación de un sospechoso, pueden violentar el debido procedimiento de ley, consigna que la determinación de si se ha violado, depende de la totalidad de las circunstancias que rodearon el procedimiento de identificación.(²)

Expuesto el derecho veamos los hechos.

Silvio Morales Pérez y Vicente Felipe eran dueños de una joyería. Al liquidar el negocio, Silvio Morales guarda en su residencia en la Calle Georgetti Núm. 1407, parada 20, las joyas que le correspondieron. Afirma que tenían un valor de $100,000.

En la tarde del 26 de febrero de 1966 como a las dos y media, llegaron a la residencia del señor Morales dos personas. Las recibió la esposa de éste que a la sazón estaba sola con un bebé de un mes de nacido. Declaró que "a esa hora . . . tocaron a la puerta, yo franquié [*sic*] la puerta y al abrir vi dos señores, uno vestido con un gaván [*sic*] de

---

que formen la fila; si hubiere afirmado conocer aquella de cuya confrontación se trata, se le permitirá reconocerla detenidamente, y se le prevendrá que toque con la mano a la designada, manifestando las diferencias o semejanzas que advierta entre el estado actual y el que tenía en la época a que en su declaración se refiera.

"Art. 224.—Cuando sean varios los declarantes o las personas confrontadas, se verificarán tantos actos separados cuantas sean las confrontaciones que deban hacerse."

(²) En el caso de *Stovall* se determinó que la circunstancia de que la testigo principal estaba a las puertas de la muerte justificó el que se presentara sólo al sospechoso para su identificación. En el caso de *Simmons*, cinco testigos separadamente identificaron a *Simmons* en una serie de fotografías donde éste aparecía acompañado de otras personas. A pesar de que se sostuvo el procedimiento empleado para la identificación, se apunta en el escolio 6 que aparece a la pág. 386 que se pudieron adoptar otras salvaguardas para garantizar los derechos del acusado.

cuadros y otro vestido con un pantalón oscuro, con una camisa verde como de nylón." Manifiesta que los señores le informaron que venían por una mercancía para llevarla a Mayagüez, pero que ella les contestó que no intervenía con la mercancía, que esperaran a la secretaria quien había salido a buscar una leche para el bebé. "Al decir esto mi nene lloró, que lo tenía encima de la cama, estaba cambiándole el pañal y al voltearme a ir a ver a mi nene, al voltear, este señor [señalando al apelante Gómez Incera] me encañonó, o me encañonaron y me llevaron para el cuarto donde estaba mi nene." Declara que la encañonaron "con un arma, con una pistola con la parte de alante como larguita."

En ese momento tocan a la puerta. Es la secretaria que regresa. Le abrieron y se encontró frente a uno de los asaltantes apuntándole con una pistola. Trató de gritar pero la señora Morales le dijo que no lo hiciera.

El fiscal pregunta "Le explicó ella en ese momento por qué no debía gritar?" contestando la testigo "No hubo necesidad porque al yo sentir la voz inmediatamente miré y estaba el señor Ignacio Gómez [el apelante] apuntándole a ella por detrás."

Los individuos escaparon con las joyas que el señor Morales tenía guardadas en su casa. Informada la detective se comenzó la investigación. Recibió una confidencia y ocupó las joyas en casa de un tal Naim Ferrá. Cuando la detective se persona en la casa del apelante para arrestarlo, pidió autorización a la esposa de éste para entrar. Ella accedió alegando que el apelante no se encontraba allí. Lo encontraron debajo de una cama. A los dos días de ocurridos los hechos llevaron a la señora Morales y a la secretaria al cuartel para que identificaran al apelante. Inmediatamente lo identifican. En el contrainterrogatorio a que fueron sometidas por la defensa, se estableció que para identificar al apelante se les presentó solo. Tenía el propósito de establecer que una identificación llevada a efecto en esa forma no

es confiable. Y normalmente no lo es como lo ha resuelto el Tribunal Supremo de los Estados Unidos en los casos de *Wade, Gilbert, Stovall* y *Simmons* antes citados. Pero esos mismos casos han establecido que a veces la confiabilidad de la identificación depende de la totalidad de las circunstancias presentes.

No olvidemos que la señora Morales y la secretaria declararon que toda la transacción duró entre veinte y veinticinco minutos; que tuvieron durante ese tiempo ocasión de observar detenidamente a los dos individuos; que éstos no usaban disfraz de clase alguna. Describen cómo el aquí apelante le entregó un esparadrapo a la secretaria para que ésta lo pusiera en la boca de la señora Morales de manera que ésta no pudiera gritar. Que ella no pudo y entonces el propio apelante lo hace. Afirma la secretaria que "estaba nerviosa pero no para perder la lucidez y poder reconocer una persona." Declara la señora Morales que en ningún momento perdió su conocimiento o sus facultades. "No se me borraba de la mente" contesta al abogado defensor.

■ En estas circunstancias estamos convencidos que las dos testigos tuvieron amplia oportunidad de observar al apelante para poder luego identificarlo sin temor alguno de que pudiera ocurrir un extravío de la justicia. Por más de veinte minutos estuvieron observándolo en pleno día, y habiendo ocurrido la primera identificación a sólo dos días de ocurridos los hechos no puede haber temor a una equivocación.

■ Podría argüirse que lo expuesto no milita en contra de que al llevar las testigos al cuartel para que identificaran al apelante, se le presentara junto con otras personas parecidas vestidas en igual forma a como ellas lo describieron. La identificación hubiera sido más convincente y segura. No hay duda que eso es así, pero como hemos visto la identificación que hicieron las testigos, por las circunstancias presentes en este caso, no es menos segura. Debe

dejarse consignado que las autoridades deben tener especial cuidado en rodear el proceso de identificación de las salvaguardas necesarias para garantizar debidamente los derechos a los ciudadanos bajo investigación. Hasta que se adopten las reglas correspondientes nos parece que siguiendo sustancialmente, en lo que es viable conforme a nuestro procedimiento, lo dispuesto en el Art. 369 de la Ley de Enjuiciamiento Criminal para las Islas de Cuba y Puerto Rico, antes transcrito, es suficiente garantía. Así el reconocimiento o identificación se practicará poniendo a la vista del que hubiere de verificarlo al sospechoso o acusado haciéndolo comparecer en unión con otras personas de circunstancias exteriores semejantes. A presencia de todas ellas o desde un punto en que no pudiese ser vista según lo determinare la persona que está practicando la investigación, el que deba practicar el reconocimiento manifestará si se encuentra en la rueda o grupo la persona a quien hubiese hecho referencia en sus declaraciones designándola en caso afirmativo clara y determinadamente. [3]

Sostiene el apelante que perjudicó al acusado el que se declarara sin lugar la última solicitud de la suspensión que hiciera la defensa. El juez de instancia estuvo justificado en su negativa. Del récord surge que se había suspendido a petición de la defensa en ocasiones anteriores y que las razones aducidas en la última ocasión no justificaban la suspensión. La lectura del récord demuestra que no le perjudicó la suspensión. La defensa presentó su caso completo y eficientemente.

La cuestión de que el arma no fue descrita suficientemente no tiene méritos. Si en algún caso no puede haber duda de la portación del arma es en el presente en que la

---

[3] Debe recordarse que el Tribunal Supremo de los Estados Unidos en *United States* v. *Wade*, 388 U.S. 218 (1967) y *Gilbert* v. *California*, 388 U.S. 263 (1967) resolvió que un acusado tiene derecho a asistencia de abogado en esta etapa del procedimiento.

utilizaron para intimidar y en efecto intimidaron a dos personas para poder robarse prendas valoradas en más de cien mil dólares. La descripción que del arma hacían las dos testigos presenciales es suficiente.

■ El incidente relacionado con la publicación en un periódico de una información relacionada con la celebración del juicio no perjudicó al apelante. En un periódico se publicó información al efecto de que "el juicio continúa viéndose hoy y se espera que toda la prueba haya sido presentada por la tarde del martes o la mañana del miércoles. El Juez Miranda dispuso medios de seguridad en la Sala en vista de los informes hechos llegar a su conocimiento según los cuales el acusado había observado una actitud amenazante para el fiscal Noriega." La defensa solicitó un *mistrial*. El juez inquirió de todos y cada uno de los jurados si habían leído la información, (sin informarle en qué consistía ésta) y todos y cada uno de ellos contestaron en la negativa. El juez no permitió que la defensa preguntara a los señores del jurado. Imputa esto como error. No lo fue. En vista de las contestaciones categóricas de los jurados al efecto de que no conocían la información a nada conducía permitir la intervención de la defensa.

*Se confirmarán las sentencias apeladas.*

El Juez Asociado Señor Rigau concurre en el resultado.

