EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS
RAÚL MORALES ROMERO, acusado y apelante.

*Número:* CR-70-75 *Resuelto:* 29 de febrero de 1972

*Santos P. Amadeo,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Jorge Ríos Torres, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

El fiscal formuló acusación contra el aquí apelante por el delito de Hurto Mayor. Se le imputó que el 3 de mayo de 1969, mientras la Sra. Felícita Hernández de Estrella esperaba el cambio de luz en la calle Providencia de Santurce, sustrajo del automóvil que ella conducía una cartera de mujer que contenía prendas valoradas en más de cien dólares y la suma de trescientos treinta y siete dólares pertenecientes a la señora Estrella.

Pasados tres días de los hechos que dieron lugar a la convicción del apelante y sin que se hubiese radicado acusación en su contra, la perjudicada identificó al apelante como el autor de los hechos entre siete u ocho retratos que se le mostraron. Momentos más tarde lo identificó personalmente en una rueda de detenidos donde había "cinco o seis muchachos".

En la vista del caso el apelante renunció a su derecho a ser juzgado por jurado. El tribunal aceptó su renuncia. Desfilada la prueba el tribunal declaró culpable al acusado y lo sentenció a cumplir una pena indeterminada de tres a seis años de presidio.

## I

Se señala como primer error que la sentencia dictada es nula e ineficaz porque el acusado no renunció expresa e inteligentemente su derecho a juicio por jurado.

El señalamiento carece de mérito. El apelante acepta que el juez de instancia le explicó extensamente la diferencia entre un juicio por jurado y uno por Tribunal de Derecho. En adición el juez le hizo varias preguntas para asegurarse de la voluntariedad de la renuncia. (1)

---

(1) El incidente sobre la renuncia ocurrió de la siguiente manera:

"La Defensa:

"Vamos a informarle al Tribunal que luego de haber hablado con el Acusado y explicarle el derecho a juicio por jurado y explicarle la naturaleza existente de este derecho, explicarle las conscuencias de una renuncia a este derecho, él me ha informado que interesa renunciar al derecho a juicio por jurado y que lo hace libre y espontáneamente tomando en consideración los hechos del caso.

"Hon. Juez:

"¿Usted ha escuchado a su abogado manifestarle al Tribunal que usted desea renunciar a un derecho que usted tiene a que el caso se vea ante un jurado?

"Acusado:

"Sí, señor.

"Hon. Juez:

"Un juicio por jurado es un juicio en que usted sería juzgado por doce personas del distrito judicial de San Juan que serían escogidas por las partes mediante un procedimiento de preguntas y respuestas, preguntándole sobre la capacidad y competencia de los jurados para actuar como jurados en el caso. Luego que las partes aceptaran esas doce personas se le tomaría juramento definitivo, se sientan aquí en el Tribunal constituyendo un pequeño cuerpo de jurados que escuchan la prueba que se presenta, cuando termina el desfile de la prueba serían instruidos sobre las reglas de ley que son mandatorias para ellos resolver el caso y se retirarían a deliberar y aplicando las reglas de ley decidirían si usted es culpable o inocente. Cualquier veredicto al que arribe el jurado tiene que ser un veredicto en que estén de acuerdo por lo menos ¾ partes de ellos. Un jurado compuesto de 12 personas, por lo menos nueve de ellas tienen que estar de acuerdo en cualquier veredicto que ellos rindan.

"Un juicio por Tribunal de Derecho es un Juicio donde quien va a juzgar y determinar si es usted culpable o inocente es el Juez que preside la sala tomando en consideración toda la prueba que se presente y que sea admitida. La diferencia entre uno y otro tipo de proceso es que en el juicio por jurado usted tiene la ventaja de que el Pueblo tiene que convencer a 9 de los 12 jurados más allá de toda duda razonable; mientras que en el juicio por Tribunal de Derecho solamente una persona es la que va a resolver el caso; o sea, el Juez que preside la sala.

"Hechas estas explicaciones yo le pregunto si usted está de acuerdo con lo anunciado por su Abogado que usted renuncia a ese derecho Constitucional que usted tiene a juicio por jurado.

■ No hay duda de que la renuncia al derecho a juicio por jurado debe ser hecha por el acusado voluntaria e inteligentemente. *Pueblo* v. *Juarbe de la Rosa*, 95 D.P.R. 753 (1968). Véanse además, *Pueblo* v. *Delgado Martínez*, 96 D.P.R. 720 (1968); *Pueblo* v. *Colón Báez*, 96 D.P.R. 632 (1968). No obstante, nuestra decisión en el caso de *Juarbe de la Rosa* no es de aplicación al caso de autos. En dicho caso, a diferencia del presente, el récord no contenía elemento alguno que permitiera al juzgador determinar la inteligencia, espontaneidad y voluntariedad de la renuncia.

■ Apunta el apelante que no surge del récord que el magistrado le preguntase sobre su edad, escolaridad y sobre sus facultades mentales. Aunque dichos extremos pueden ser útiles para la determinación de si la renuncia se hace voluntaria e inteligentemente, no creemos que sean indispensables

"R Por Sala de Derecho.
"P ¿Qué dice?
"R Sala de Derecho.
"P ¿A usted alguien le ha ofrecido algo para que renuncie a ese derecho?
"R No.
"P ¿Alguien lo ha obligado en alguna forma a que usted renuncie a ese derecho?
"R No, señor.
"P Hay algunas circunstancias ajenas o extrañas a su propia voluntad que lo hayan movido a renunciar a ese derecho o es por su propia voluntad?
"R Por mi voluntad.
"P ¿La decisión es de su abogado o una decisión que usted mismo ha tomado?
"R Mi voluntad.
"P ¿Usted mismo ha tomado la decisión?
"R Sí.
"P ¿Alguien lo ha obligado a que renuncie a ese derecho a juicio por jurado?
"R No.
"P El Tribunal acepta la renuncia que ha hecho el Acusado a que su caso se vea ante un jurado por entender que es voluntaria e inteligentemente hecha y personalmente hecha por él y en su consecuencia se ordena que este caso continúe ventilándose por Tribunal de derecho. Llámese la prueba en este caso."

en el logro de ese fin. Ya dijimos en *Pueblo* v. *Llanos Virella,* 97 D.P.R. 95 (1969) que en ausencia de circunstancias que lo justifiquen, el tribunal no está obligado a investigar la edad, educación ni ciertos antecedentes del acusado.

Entendemos que el récord de este caso contiene elementos de juicio suficientes que permitieron a la sala sentenciadora concluir que la misma fue inteligente, voluntaria y plenamente comprendida.

## II

■ Se señala que la prueba no demuestra que el acusado apelante es culpable del delito que se le imputa más allá de toda duda razonable.

No tiene la razón. La perjudicada declaró que mientras esperaba el cambio de luz en la calle Providencia sintió que alguien introdujo la mano por la ventana derecha del automóvil y tomó la cartera que ella tenía a su lado. Que al ver la cara del acusado se le quedó grabada en la mente. Que la cartera contenía dos pulseras, un reloj, una sortija, dos plumas y dinero en efectivo por la cantidad de $380.00 que había cobrado dos días antes. Que luego fue al cuartel de la policía e informó lo sucedido. Que transcurridos dos o tres días la llamaron al cuartel de la policía. Que allí le mostraron siete u ocho retratos entre los cuales identificó el del acusado. Momentos más tarde, "entre cinco o seis muchachos" que había detenido la policía, identificó nuevamente al acusado. Declaró que no tuvo dificultad en identificar al acusado pues su cara se le había quedado grabada en la mente.

El fiscal renunció al resto de la prueba por ser acumulativa y la puso a disposición de la defensa. Ésta utilizó al testigo Pedro Manuel Hernández. Este testigo, menor de edad y recluido a la fecha del juicio en el Anexo Miramar para Adultos Jóvenes declaró que él había sustraído la cartera de automóvil de la Sra. Estrella, que al cambiar la luz tomó la cartera y huyó con ella. Que la cartera contenía varias prendas y

alrededor de treinta y un dólares. Que vendió un reloj y le dio el resto de las prendas a "El Ratón". Manifestó además que él había cometido este tipo de acto en otras ocasiones y que el día de los hechos había visto al acusado jugando baloncesto.

El testimonio de este testigo fue impugnado por el fiscal a base de una declaración jurada prestada ante otro fiscal por el propio testigo en la que éste le imputaba la comisión de los hechos al acusado apelante. El testigo intentó explicar estas contradicciones alegando que la declaración original fue motivada por los golpes que le dieron los detectives.

En su inherente función de aquilatar y dirimir conflictos en la prueba el tribunal optó por creer el testimonio de la perjudicada y rechazar el del mencionado menor. El testimonio de la perjudicada creído por el tribunal es suficiente para encontrar al acusado culpable del delito que se le imputa.

## III

Se señala como tercer error que la sentencia dictada en este caso es nula al privarse al acusado apelante del derecho a asistencia de abogado en el acto de identificación de las fotografías entre las que se encontraba la del apelante. Este apuntamiento se apoya en la doctrina del caso de *United States* v. *Wade*, 388 U.S. 218 (1967). Tampoco se cometió este error.

La cuestión planteada en el caso de *Wade*, supra, en las palabras del Juez Brennan, fue si la identificación del acusado hecha en sala debía ser excluida como evidencia, debido a que el confrontamiento del acusado y el testigo en una rueda de detenidos había ocurrido después de haberse radicado la acusación, y en ausencia del abogado defensor que ya había sido nombrado.

El Tribunal Supremo de Estados Unidos hace un estudio en ese caso del derecho a asistencia de abogado en las etapas anteriores al juicio y concluye a la página 227, que el caso de

*Powell* v. *Alabama*, 287 U.S. 45 y subsiguientes([2]) que tratan sobre la materia, requieren que se examine cualquier confrontación del acusado antes del juicio para determinar si la presencia de su abogado era necesaria para asegurarle su derecho a un juicio imparcial. El criterio para determinar la necesidad de abogado en las etapas anteriores al juicio se funda en la posibilidad real de que puede causarse un perjuicio sustancial al acusado.

En base a las expresiones precedentes el Tribunal Supremo de Estados Unidos al examinar los hechos del caso de *Wade* concluye, a la página 236, que la confrontación en la rueda de detenidos a que fue sometido *Wade* con posterioridad a la acusación daba lugar a la posibilidad de causar perjuicio al acusado, ya que éste se encontraba en una etapa crítica en la que tenía derecho a asistencia de abogado tal y como si se tratara del juicio en sí. Allí no se impugnaba el proceso de identificación mediante fotografías, sino las circunstancias en que el acusado fue sometido a confrontación en una rueda de detenidos.

En *Simmons* v. *United States*, 390 U.S. 377 (1968), el Tribunal Supremo tuvo ante sí un procedimiento de identificación a través de fotografías, pero no se planteó la falta de asistencia de abogado en tal procedimiento, sino si el procedimiento de identificación por medio de fotografías había sido tan perjudicial que invalidaba su convicción. El tribunal determinó que tal planteamiento debía ser examinado a la luz de la totalidad de las circunstancias que rodearon el proceso de identificación. Véase, *Stovall* v. *Denno*, 388 U.S. 293 (1967). En *Simmons* se establece la norma de que la identificación en el juicio basada en una identificación anterior por medio de fotografías sólo se eliminará si la identificación fotográfica anterior fuera tan impermisiblemente sugestiva que

---

([2]) Se refiere el Tribunal Supremo a los casos de *Massiah* v. *United States*, 377 U.S. 201; *Escobedo* v. *Illinois*, 378 U.S. 478; *Miranda* v. *Arizona*, 384 U.S. 436.

dé lugar a una probabilidad sustancial de una identificación errónea.

█ El Tribunal Supremo de Estados Unidos no ha resuelto la cuestión que nos ocupa, empero la cuestión ha sido resuelta por dos circuitos de la Corte de Circuito de Apelaciones en el sentido de que la doctrina de *Wade* no aplica a la identificación fotográfica que se efectúa antes del juicio. *United States* v. *Bennett*, 409 F.2d 888 (2d Cir. 1969); *McGee* v. *United States*, 402 F.2d 434 (10th Cir. 1968).

Tanto en el caso de *Bennett*, supra, como en el de *McGee*, supra, se enfatiza que la identificación por medio de fotografías no conlleva la confrontación del acusado con el testigo, contrario a lo que ocurre cuando se enfrenta en la rueda de detenidos (*line-up*). En el caso de *Bennett*, supra, pág. 899, se resuelve que el requerir la asistencia de abogado en procedimientos anteriores al juicio donde no esté presente el acusado, conduciría a forzar la Sexta Enmienda más allá de sus lindes existentes.

Al respecto dice el caso de *Bennett*, supra, pág. 899:

"Ninguno de los análisis clásicos con respecto a la asistencia que ofrecen los abogados, el del Juez Sutherland en *Powell* v. *Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed 158 (1932) y el del Juez Black en *Johnson* v. *Zerbst*, supra, 304 U.S. 462–463, 58 S.Ct. 1019 y en *Gideon* v. *Wainwright*, supra, 372 U.S. 344–345, 83 S.Ct. 792, sugieren que el abogado debe de estar presente cuando el fiscal esté interrogando testigos en ausencia del acusado, aun cuando, como aquí, el acusado esté bajo arresto; el abogado más bien se provee para evitar que el acusado caiga en algún ardid maquinado por el abogado del otro lado y para que vele por que todas las defensas disponibles sean utilizadas."

Debe notarse que en el caso de *Wade*, supra, la identificación ocurre tras la radicación de una acusación y luego de haberse nombrado un abogado defensor. En el caso de autos, por el contrario, ni siquiera se había radicado acusación cuando se procedió a la identificación.

█ Sin entrar a la determinación de si el caso de *Wade* es

de aplicación en esta jurisdicción concluimos, por las razones expuestas precedentemente, que el principio de dicho caso no se extiende al acto de identificación fotográfica antes del juicio.

## IV

Se señala como cuarto y último error que "la sentencia dictada contra el acusado apelante es nula e ineficaz porque su identificación se hizo en violación de los Arts. 368, 369 y 370 de la Ley de Enjuiciamiento Criminal Española de 1870 que regía en Puerto Rico en su totalidad hasta que se adoptó en Puerto Rico el Código de Procedimiento Criminal de 1902." Arguye el apelante que dichos artículos están todavía en vigor en Puerto Rico.

En *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249 (1969) discutimos el alcance de las disposiciones de la referida ley española al decir que hasta que se adopten las reglas referentes a la identificación es suficiente garantía seguir en *lo que sea viable conforme a nuestro procedimiento* lo dispuesto en el Art. 369 de la Ley de Enjuiciamiento Criminal para las Islas de Cuba y Puerto Rico. Allí establecimos la regla a seguirse al decir: ". . . Así el reconocimiento o identificación se practicará poniendo a la vista del que hubiere de verificarlo al sospechoso o acusado haciéndolo comparecer en unión con otras personas de circunstancias exteriores semejantes. A presencia de todas ellas o desde un punto en que no pudiese ser vista según lo determinare la persona que está practicando la investigación, el que deba practicar el reconocimiento manifestará si se encuentra en la rueda o grupo de personas a quien hubiese hecho referencia en sus declaraciones designándola en caso afirmativo clara y determinadamente."

En *Gómez Incera,* aparte de sugerir unas normas que deben seguirse en el procedimiento de identificación, adoptamos la básica y fundamental doctrina establecida en los casos *Stovall* y *Simmons,* supra, al efecto de que la determinación de si se ha violado el debido procedimiento de ley, en el

proceso de identificación de un sospechoso, depende de la totalidad de las circunstancias que rodearon el procedimiento de identificación. En el caso ante nos, el reconocimiento del acusado, a los dos o tres días después de la comisión del delito, de entre varias fotografías presentadas a la perjudicada, unido a la identificación que ésta hizo del acusado entre varios detenidos en el cuartel cuando aún no se había radicado acusación contra el acusado, da tal certeza de la identificación, que excluye cualquier posibilidad de que el procedimiento utilizado esté viciado en forma alguna que pueda constituir una violación del debido procedimiento de ley. En vista de ello no podemos concluir que el error se haya cometido.

*La sentencia apelada será confirmada.*

El Juez Presidente, Señor Negrón Fernández, no intervino.