El Pueblo de Puerto Rico, demandante y apelado, *v.* Aybonet Tanco Cora, acusado y apelante.

*Número:* CR-71-155 *Resuelto:* 25 de enero de 1973

---

*Raúl M. Olmo Olmo,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Vuelve a surgir ante nos la falta de cumplimiento por parte de la policía con la norma que establecimos en *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249 (1969). Tal falta nos obliga a revocar la convicción en este caso.

El apelante fue acusado y convicto de escalamiento en primer grado. La testigo que lo relacionó con los hechos que dieron lugar al delito fue una joven de 16 años que testificó, en síntesis, que a eso de las dos de la mañana del día 13 de enero de 1970, mientras dormía en su habitación en el hogar de sus padres en Villa Palmeras de Santurce, "de momento desperté y vi en la esquina de mi cama, alzando mi mosquitero, a un hombre . . . bajito, medio delgado, fuerte, trigueño y con manchas . . . estaba desnudo de la cintura para arriba . . ."; que le llamó la atención la cara, así como las manchas en los brazos; que había claridad suficiente en el cuarto proveniente de la luz en un poste de la calle para ver a una persona; que desde el momento que se despertó hasta el momento que vio a dicha persona transcurrieron unos cuatro o cinco segundos; que "el individuo salió corriendo del cuarto"; que la policía fue informada del suceso con motivo de lo cual vino un policía esa noche y un detective al día siguiente a informarse de los

hechos; que a los dos días unos detectives fueron al colegio donde estaba la testigo "y le dijeron que tenían dos sospechosos en el carro" y entonces ella salió hacia el carro donde estaba el apelante y otro individuo alto y trigueño y ella identificó al apelante como la persona que vio junto a su cama en la noche de los hechos; que no había visto al apelante antes de esa noche; que de su casa faltaba "dinero de mi mamá . . . prendas . . . pulsera de charms, cadenas, relojes, un alfiler con piedra de topacio y otras cosas."

Terminada la prueba de cargo, la defensa solicitó la absolución perentoria del apelante por estar viciada la identificación del apelante al no haberse llevado a cabo en armonía con la norma que establece el caso de *Gómez Incera*, supra. Su moción fue denegada porque "la identificación en este caso es producto de una observación de la testigo la noche de los hechos", de manera que el caso de *Gómez Incera* no es aplicable; que "Sin debida asistencia de abogado y sin debido 'line up', si la evidencia se admite sin objetarse, se renuncia a todo lo demás." Al terminar el juicio cuando se volvió a plantear la cuestión de la nulidad de la identificación, determinó el tribunal de instancia que:

". . . entiende el Tribunal que no es [sic] de aplicación en [sic] los casos de Wade, Guilbert y Simmons y que más bien es de aplicación en el caso de Gómez Incera, en aquel aspecto donde el Tribunal Supremo establece que bajo aquellas circunstancias, estaba plenamente convencido que las testigos identificaron correctamente al acusado. Entendemos que en este caso, al igual que en el caso de Gómez Incera, entendemos que no ha habido duda alguna de parte de la joven Ivette González Meléndez de que la persona que ella observó la noche de los hechos y que luego identificó sin vacilación alguna, es la misma persona y en la forma que declaró la testigo, tomando en consideración que solo es una persona de 16 años de edad, la testigo identificó al acusado conforme a derecho, a pesar de que no hubo la situación del line up tantas veces mencionado en el caso del Honorable Tribunal Supremo de los Estados Unidos."

En el curso de la presentación de la prueba de la defensa, el apelante renunció a juicio por jurado y el caso continuó por tribunal de derecho.

En este recurso el apelante apunta que el tribunal de instancia incidió al admitir en evidencia la identificación del apelante y el testimonio sobre dicha identificación.

■ El récord demuestra que no se cumplió con la norma que establecimos en *Gómez Incera,* supra, y que no hubo en este caso circunstancia alguna como dijimos en *Pueblo* v. *Montañez Ramos* 100 D.P.R. 911 (1972), que justificara el no aplicar dicha norma. El dejarla de aplicar en circunstancias como la de este caso constituye una negación al apelante del debido proceso de ley. En otras palabras, los procedimientos que llevan a una identificación están tan viciados "que como cuestión de derecho hagan constitucionalmente inadmisible la identificación." *Foster* v. *California,* 394 U.S. 440, 443 (1969).

Es tiempo ya de que la policía y los fiscales se apresten a aplicar el procedimiento de identificación que establecimos en *Gómez Incera,* supra, en circunstancias como las de este caso pues al dejar de hacerlo anulan la identificación y nos obligan a revocar las sentencias que se dictan en casos como el que nos ocupa.

De conformidad con lo dicho, *se revocará la sentencia dictada en este caso por el tribunal de instancia, en 10 de julio de 1970, y se absolverá al apelante.*

El Juez Presidente Interino, Señor Pérez Pimentel, y los Jueces Asociados, Señores Martínez Muñoz y Martín, disienten.