EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN RIVERA VÁZQUEZ, acusado y apelante.

*Número:* CR-73-95        *Resuelto:* 4 de noviembre de 1974

*Benigno Alicea Alicea,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR CADILLA GINORIO emitió la opinión del Tribunal.

El apelante fue acusado de tentativa de robo; encontrado culpable de dicho delito por tribunal de derecho y sentenciado a una pena indeterminada de 2 a 6 años de presidio con trabajos forzados.

La prueba desfilada consistió del testimonio del perjudicado, José Molina Fernández y del policía Israel Pérez. La defensa no presentó prueba.

El apelante resume correctamente la declaración de los dos testigos de la siguiente manera:

"José Molina Fernández (T.E. págs. 7–51) declaró que es operador de taxi. Que el día de los hechos, 7 de noviembre de 1972, como a las 12:30 de la madrugada, recogió a tres personas en la plaza de Río Piedras para llevarlos a Barrio Obrero. Dos eran trigueños con afros y camisas de muñequitos; como de 5 pies 4 pulgadas de estatura. La otra persona era blanca, usaba una 'T-shirt' blanca y le faltaba el ojo izquierdo; como de 5 pies 6 pulgadas de estatura. Todos se montaron en el asiento trasero del taxi.

Como a los 15 ó 20 minutos llegaron a la Calle Martinó en Barrio Obrero. Se bajaron por la puerta derecha. Los dos trigueños sacaron puñales y lo atacaron. El otro le pidió el dinero. Al verlo herido se fueron. No le llevaron dinero. Otro chofer de taxi lo llevó a curar. Al dispensario se presentó el policía Pérez. Que le describió a los individuos. Luego regresó con una persona y el [sic] lo identificó. La persona resultó ser el acusado.

En la repregunta atestó que los hechos ocurrieron de noche. Que no había visto antes a las personas que montaron el taxi. Que la calle estaba bien iluminada. Durante el viaje la luz interior del taxi no estaba prendida. Que las [sic] dos que acompañaban al acusado tenían más o menos el mismo pelo, la misma estatura, las mismas camisas y pantalón. Tenían ojos negros. La nariz 'esparrachada'; las cejas abultadas uno y más claras el otro.

Atesta, además, que por el espejo retrovisor se pueden ver personas. Que miró como 5 ó 6 veces, por dos o tres segundos, para ver los automóviles que le seguían y a los pasajeros. Que el acusado, al apearse del taxi, estaba detrás de los otros dos. Que ellos no tenían sortijas; ni reloj. A el [sic] se acercaron dos pasajeros. Que al apearse se fueron por detrás del taxi. Que cuando lo atacaron él trató de salir por la otra puerta.

Que le informó al policía que eran dos personas trigueñas vestidas con camisa de muñequitos y mahones oscuros; que el otro era blanco y le faltaba el ojo izquierdo y vestía 'T-shirt'. Que el policía regresó como a los 15 ó 20 minutos; que era como la una menos diez. Que tan pronto el [sic] vio a la persona identificó inmediatamente; él salía de la oficina del médico; el policía no habló con él ni lo fue a buscar porque no dejan entrar a nadie

cuando están curando. Que le informaron que el policía estaba allí con una persona detenida; que ya sabía que el policía tenía uno de los tres allí.

Enfrentado a su declaración jurada, prestada ante el fiscal, en la cual no aparece descripción alguna del acusado-apelante ni de sus acompañantes, dice que 'no está, pero yo lo declaré en la declaración'. Que le dijo todo a la secretaria pero ella no lo escribió. Que la leyó y firmó después de preguntarle si eso que decía la declaración era todo lo que había dicho. Que también dijo que miraba por el espejo retrovisor y tampoco lo pusieron. Que tampoco aparece en la declaración que el acusado-apelante era quien le pedía el dinero.

En el redirecto declaró que le dio la descripción de los individuos al policía. Que miró bien a las personas que cogió, el día de los hechos, antes de montarlos. Que la transacción en que lo acuchillan y le piden dinero tomó como 5 minutos. Que pudo observar al acusado. Que describió al acusado-apelante como de 5 pies 6 pulgadas, tez blanca, pelo oscuro; que le faltaba el ojo izquierdo. En la ampliación de la repregunta declaró que todo el tiempo estuvo dentro del automóvil. Que el acusado-apelante estaba detrás de los otros dos. Que uno de los trigueños le hirió primero. Que el día que prestó la declaración jurada habló con el policía Pérez en el cuartel.

Israel Pérez (T.E. págs. 52–75) declaró que es policía. Que el 7 de noviembre de 1972 al pasar frente al dispensario médico de Barrio Obrero lo detuvo una persona y le informó que habían herido a una persona. Entró al dispensario. Allí estaba el señor Molina Fernández y éste le informó lo sucedido. Le describió a los individuos. Al acusado lo describió como blanco, tuerto del ojo izquierdo y que vestía 'T-shirt' blanca y pantalón oscuro. Que se dirigió al lugar de los hechos y allí le señalaron al acusado-apelante como el que 'trató de robarle al taxista' y él lo detuvo. Llevó al apelante al dispensario y allí el señor Molina lo identificó.

En la repregunta declaró que la primera vez estuvo en el dispensario como cinco minutos. Preguntó por el taxista pues no lo conocía. Este estaba en un cuarto siendo curado. Que salió del dispensario casi a la una. Llegó a la calle Martinó 'como a la una y cinco'. Que efectuó el arresto como a la 1:30 A.M. Que llegó con el arrestado a la 1:35 A.M. al dispensario. Que le había dicho al perjudicado que volvería. Fue donde él (el señor Molina) y éste

identificó al acusado. Que el perjudicado estaba en la Oficina del médico todavía. A este [*sic*] el acusado-apelante se le presentó solo; habló (el testigo) con el perjudicado como 10 minutos fuera de la oficina del médico; fuera del dispensario; también estaba el acusado con ellos. Llevó al acusado a la Sala de Investigaciones; fue también el perjudicado. Allí mismo hizo la denuncia."

Ante nos, alega el apelante los siguientes errores:

"PRIMER ERROR: Incidió la Ilustre Sala de Instancia al denegar la solicitud de 'la supresión de la identificación' del apelante, pues tal identificación viola el derecho al debido proceso de ley del acusado-apelante."

"SEGUNDO ERROR: La prueba de cargo no es suficiente para probar el delito imputado y más bien de ella surge una duda razonable que favorece al apelante."

En cuanto al primer error, alega el apelante que se hacía necesaria una identificación en rueda, dado los hechos antes relatados.

Desde el caso de *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969), dijimos que "[l]a identificación del acusado es una fase esencial en el procedimiento criminal." Establecimos en dicho caso unas normas a seguir en la identificación de un sospechoso, pero dadas las circunstancias del mismo resolvimos que la identificación allí hecha no daba lugar a una equivocación. A esos efectos dijimos a la pág. 259:

"No olvidemos que la señora Morales y la secretaria declararon que toda la transacción duró entre veinte y veinticinco minutos; que tuvieron durante ese tiempo ocasión de observar detenidamente a los dos individuos; que éstos no usaban disfraz de clase alguna. Describen cómo el aquí apelante le entregó un esparadrapo a la secretaria para que ésta lo pusiera en la boca de la señora Morales de manera que ésta no pudiera gritar. Que ella no pudo y entonces el propio apelante lo hace. Afirma la secretaria que 'estaba nerviosa pero no para perder la lucidez y poder reconocer una persona.' Declara la señora Morales que en ningún momento perdió su conocimiento o sus facultades. 'No se me borraba de la mente' contesta al abogado defensor.

En estas circunstancias estamos convencidos que las dos testigos tuvieron amplia oportunidad de observar al apelante para poder luego identificarlo sin temor alguno de que pudiera ocurrir un extravío de la justicia. Por más de veinte minutos estuvieron observándolo en pleno día, y habiendo ocurrido la primera identificación a sólo dos días de ocurridos los hechos no puede haber temor a una equivocación."

Posteriormente aplicando *Pueblo* v. *Gómez Incera,* supra en *Pueblo* v. *Ruíz Ramos,* 99 D.P.R. 812 (1971), dijimos que la identificación del testigo, quien no conocía anteriormente al acusado, y que sólo lo vio por 30 segundos y a quien sólo se le mostró la fotografía del acusado y luego a este último, sin que se le hiciera rueda de identificación, fue sugestiva y poco confiable para establecer la culpabilidad del acusado más allá de duda razonable.

En *Pueblo* v. *Morales Romero,* 100 D.P.R. 436, 444 (1972), dijimos:

"En *Gómez Incera,* aparte de sugerir unas normas que deben seguirse en el procedimiento de identificación, adoptamos la básica y fundamental doctrina establecida en los casos *Stovall* y *Simmons,* supra, al efecto de que *la determinación de si se ha violado el debido procedimiento de ley, en el proceso de identificación de un sospechoso, depende de la totalidad de las circunstancias que rodearon el procedimiento de identificación.* En el caso ante nos, el reconocimiento del acusado, a los dos o tres días después de la comisión del delito, de entre varias fotografías presentadas a la perjudicada, unido a la identificación que ésta hizo del acusado entre varios detenidos en el cuartel cuando aún no se había radicado acusación contra el acusado, da tal certeza de la identificación, que excluye cualquier posibilidad de que el procedimiento utilizado esté viciado en forma alguna que pueda constituir una violación del debido procedimiento de ley. En vista de ello no podemos concluir que el error se haya cometido." (Bastardillas nuestras.)

*Pueblo* v. *Montañez Ramos,* 100 D.P.R. 911, 919 (1972), nos presenta unos hechos donde concluímos que el apelante

no fue legalmente identificado. Los hechos fueron los siguientes:

"El lugar estaba en una semioscuridad. Sierra usaba espejuelos oscuros. Quedaba a unos 16 pies de donde disparó el autor de los hechos. El disparar y partir el apelante del lugar tomó dos o tres segundos. Sierra estaba de espaldas cuando sonó el primer disparo. Los otros tres se sucedieron dentro de menos de dos segundos. Al oir el disparo Sierra primero se bajó, luego soltó la bebida que estaba preparando *'y tan pronto salió el muchacho corriendo yo di la vuelta.'* (Subrayado nuestro) De manera que no lo vio disparar sino quizás cuando ya salía corriendo lo que significaba que no lo vio de frente sino, a lo sumo, de lado, si es que en realidad no fue de espaldas. Añádase a esto el natural ingrediente del estruendo y humareda de los disparos y la reacción de temor y de inseguridad que producen aun en el ánimo de los más avezados y la alarma que inmediatamente cundió entre los allí presente pues como testificó Sierra 'todo el mundo se levantó . . . todo el mundo se volvió loco y yo salí gritando "llamen una ambulancia por favor".'

Bajo las anteriores circunstancias, es forzoso concluir que Sierra ni pudo identificar al autor de los delitos cuando los cometió ni estaba en condiciones físicas ni mentales para hacerlo y que la identificación que ha tratado de sostener durante su interrogatorio es producto de su deseo de fijar la responsabilidad por los hechos ocurridos en alguna persona en particular."

Nos cita el apelante los casos de *Pueblo* v. *Tanco*, 101 D.P.R. 75 (1973) y *Pueblo* v. *Delgado Meléndez*, 101 D.P.R. 79 (1973), donde revocamos ambas convicciones por entender que la identificación de ambos apelantes fue muy sugestiva y violó el debido proceso de ley. En el de *Tanco*, supra, la testigo es una niña de 16 años que observa en la penumbra de su cuarto a un individuo bajito, trigueño y con manchas, por unos cuatro o cinco minutos y que al día siguiente un detective la lleva a su automóvil para que identifique al individuo entre dos sospechosos, uno alto y otro bajito. Obviamente identificó a este último. En el de *Delgado Meléndez*, supra, un hombre le arrebató a la testigo su cartera y se fue corriendo.

Ella corrió detrás de él por unos segundos y declaró que le vió la cara unos instantes. Al otro día fue al cuartel de policía y vio a dos hombres, sin poder estar segura cual de ellos cometió los hechos. Luego uno de los policías le indica si uno de ellos en específico fue el que le quitó la cartera y le contesta que sí. Dicha identificación fue sumamente sugestiva. Obviamente en ninguno de estos dos casos se da circunstancia alguna que amerite, que como en el caso de *Gómez Incera*, supra, nos apartáramos de la norma allí expuesta.

Las circunstancias del caso ante nos, son distintas a aquellas de los casos antes mencionados donde resolvimos que la sugestividad policíaca en la identificación, violaba el debido proceso de ley.

"Por supuesto que este problema de la confrontación no puede surgir cuando el acusado es una persona conocida del testigo identificante con anterioridad a la comisión del delito *o cuando dicho testigo testifica que observó al acusado durante un tiempo razonablemente largo mientras cometía el delito imputado,* de manera que pudiera identificarlo con tal certeza y precisión que no pudiera dar lugar a un irreparable error de identificación, como en *Gómez Incera,* supra, en *Boyd* v. *State,* 472 S.W.2d 125 (Texas 1971) y en *Edmisten* v. *People,* 490 P.2d 58 (Col. 1971)." (Bastardillas nuestras.) *Pueblo* v. *Montañez Ramos,* 100 D.P.R. 911, 916 (1972).

■ En el presente caso, el perjudicado tuvo al apelante como pasajero en su taxi de unos 15 a 20 minutos; luego, mientras fue atacado lo pudo observar y finalmente cuando el policía llega al dispensario con el apelante, el perjudicado lo identifica inmediatamente. Había pasado como media hora desde que fue atacado. El policía actuó correctamente al ir al lugar de los hechos inmediatamente en busca de algún sospechoso. Allí le señalan al apelante, quien correspondía a la descripción que el perjudicado le había dado de uno de los tres atacantes. Es difícil que a dicha hora y cerca del lugar de los hechos, el policía encontrara a varias personas tuertas del ojo izquierdo y con la descripción dada por el perjudicado.

Cuando este último lo ve, lo identifica inmediatamente. El recuerdo de sus atacantes estaba fresco en su mente y lo observó durante suficiente tiempo como para que no tuviera dudas al identificarlo. Véase, *Pueblo* v. *Medina Jiménez*, 102 D.P.R. 320 (1974). Los hechos del caso ante nos, son análogos al de *Gómez Incera*, supra, donde las perjudicadas observaron al apelante de 15 a 20 minutos y podían identificarlo sin lugar a dudas.

No se violó en el presente caso, el debido proceso de ley al denegar la solicitud de "supresión de la identificación".

■ Tampoco se cometió el segundo error alegado, pues surge de los hechos más allá de duda razonable que el apelante en compañía con otras dos personas, intentó sustraer dinero en efectivo de José Molina Fernández, en contra de su voluntad y por medio de la violencia.

No habiéndose cometido los errores señalados, *se confirma la sentencia dictada contra el apelante el 31 de mayo de 1973, por el Tribunal Superior, Sala de San Juan.*