EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FELIPE MEDINA JIMÉNEZ, acusado y apelante.

*Número:* CR-73-99     *Resuelto:* 30 de mayo de 1974

Armando Chaar Padín, abogado del apelante; *Peter Ortiz, Procurador General Interino* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El apelante fue acusado del delito de violación por hechos ocurridos el 15 de marzo de 1972. La perjudicada era una joven aeromoza de una línea aérea. El día de los hechos regresaba de su trabajo a su apartamiento en Isla Verde a eso de las 4:45 de la mañana. Oculto en el zaguán del edificio había un hombre que la asaltó para robarle en el momento en que ella se disponía a subir las escaleras. La agarró por el cuello y le dijo que le diera su dinero. Ella protestó de que tenía poco dinero y su asaltante procedió entonces a conducirla a la fuerza y bajo amenaza de matarla hasta un parque de estacionamiento contiguo al edificio y allí la violó.

El juicio se celebró el 8 de febrero de 1973 ante tribunal de derecho luego de que el apelante renunciara válidamente a ser juzgado por jurado. Se le encontró culpable del delito imputádole y el día 16 de febrero de 1973 fue sentenciado a cumplir de veinte (20) a veinticinco (25) años de presidio con trabajos forzosos.

Apeló para ante nos y en su alegato hace el siguiente señalamiento de errores:

"Primer Error: Cometió error el Tribunal sentenciador al admitir una identificación poco confiable del acusado, viciada de nulidad y en abierta violación de la doctrina del caso de *El Pueblo* v. *Gómez Incera,* 97 D.P.R. 249.

Segundo Error: Cometió error el Tribunal sentenciador al dictar un fallo condenatorio sin que el testimonio de la mujer agraviada fuera corroborado con prueba que conecte al acusado con la comisión del delito imputádole, siendo por tanto insuficiente la prueba de cargo para sostener dicho fallo.

Tercer Error: Cometió error el Tribunal sentenciador al imponerle al acusado una pena excesiva de 20 a 25 años de presidio."

Consideraremos los alegados errores en el orden de su señalamiento.

La víctima declaró que estuvo en presencia del acusado unos quince (15) minutos, que el hombre que la violó era alto, tenía el pelo corto, oscuro, tenía la piel oscura, hablaba español y muy mal inglés (T.E. pág. 21), que el acusado la tenía agarrada por el cuello de frente a ella (T.E. pág. 22). También declaró que cuando lo describió a la policía dijo que tenía una camisa a rayas y pantalones oscuros, y que cuando estaban en el área de estacionamiento en el piso él le puso los pantalones de ella sobre los ojos como por cinco minutos (T.E. págs. 23–24).

En el cuartel de la policía le mostraron cinco o seis libros de fotografías que la perjudicada calculó en por lo menos mil. Luego de examinarlas señaló una en que aparecía una persona que se le parecía mucho a su atacante pero que no era él. Esa persona resultó ser un hermano del apelante. (T.E. pág. 20.) Unos días después los detectives fueron a su casa y le mostraron 6 fotografías. No pudo identificar a su asaltante en ellas. Días después la llamaron para que fuera al cuartel a identificar un sospechoso. Declaró a preguntas de la defensa que el sospechoso no era tan parecido "como algunas de las fotografías que yo ví," pero que estaba segura de que era su asaltante. Como un mes después de los hechos volvió

al cuartel para una rueda de confrontación (T.E. pág. 18). Allí según su declaración, había cinco o seis hombres en un cuarto donde ella podía verlos pero no ellos a ella. Todos eran físicamente parecidos en cuanto al color del pelo y vestían en forma parecida. Entre ellos, ella identificó positivamente al apelante como el hombre que la violó.

Advertimos en *Pueblo* v. *Gómez Incera*, supra, contra el peligro que representa para la justicia permitir que la identificación que se haga de un sospechoso responda a la sugestividad policíaca. Indicamos, a la pág. 252, que admitir una identificación producto de la sugestividad puede conducir a una negación del debido procedimiento de ley e impedir un juicio justo e imparcial. Señalamos más adelante en la pág. 253 que "esta fase del proceso investigativo debe rodearse con las salvedades necesarias que eviten que se malogre la justicia." No obstante, hicimos claro que "la determinación de si se ha violado [el debido procedimiento de ley], depende de la totalidad de las circunstancias que rodearon el procedimiento de identificación." (Pág. 257.)

En el presente caso, el hecho de que se presentara al sospechoso solo en la primera confrontación descrita por la perjudicada, si bien fue contrario a las normas sentadas en *Gómez Incera*, no fue perjudicial al apelante al extremo de viciar de nulidad todo el procedimiento. Los acontecimientos que rodearon esa exposición del sospechoso (*show up*), antes y después, demuestran que la víctima nunca tuvo dudas sobre quien fue su atacante y que cuando señaló positivamente al apelante como el hombre que la violó no lo hizo bajo sugestión de la policía. Durante la mayor parte del tiempo que duró el incidente de su violación, desde que se topó y habló con su atacante en el zaguán del edificio hasta que éste consumó el ultraje, ella lo tuvo de frente, cara a cara, y pudo captar su fisonomía en forma clara e inequívoca. Así se desprende de que pudiera señalar a un hermano del apelante de entre más de mil fotografías y asegurar que, aunque

se le parecía, no era su asaltante. Esa circunstancia, unida a la seguridad expresada por ella cuando lo vió en el cuartel de policía y su positiva identificación en rueda de confrontación más tarde disipan cualquier duda sobre la confiabilidad de su testimonio.

Bajo una situación de hechos similar se sostuvo una sentencia condenatoria por el delito de violación en *Neil* v. *Biggers*, 409 U.S. 188 (1972). Allí la víctima fue atacada una noche en su casa y llevada por su asaltante, a punta de cuchillo, hasta un bosque cercano donde éste la violó. En varias ocasiones en el curso de los próximos siete meses le mostraron a la víctima, en su casa y en la estación de policía, mediante exposición y mediante ruedas de confrontación, numerosos sospechosos y fotografías de sospechosos. En una de dichas ocasiones ella señaló una fotografía como de un hombre parecido a su asaltante, pero en ninguna de dichas ocasiones pudo identificar a su asaltante. Finalmente la llamaron al cuartel para que identificara a un sospechoso detenido bajo otro cargo. No pudieron presentárselo en rueda de confrontación porque no consiguieron otras personas que se le parecieran. El método utilizado fue la exposición o *show up*. Al igual que en el caso del apelante que aquí nos ocupa, en *Biggers* la víctima señaló al sospechoso como el hombre que la violó y expresó no tener dudas sobre su identificación.

El Tribunal Supremo federal, luego de analizar las situaciones factuales y lo resuelto en *Stovall* v. *Denno*, 388 U.S. 293 (1967); *Simmons* v. *United States*, 390 U.S. 377 (1968); *Foster* v. *California*, 394 U.S. 440 (1969), y *Coleman* v. *Alabama*, 399 U.S. 1 (1970), concluye que la identificación de *Biggers* por la víctima, aunque no fue hecha en rueda de confrontación, era admisible y no vulneró el debido procedimiento de ley. Al confirmar la sentencia condenatoria dijo, a la pág. 199:

". . . Según indican nuestros casos, los factores a ser considerados al evaluar la posibilidad de una errada identificación

incluyen la oportunidad que tuvo el testigo de ver a la persona que cometió el delito en el momento de cometerlo, el grado de atención del testigo, la exactitud de las descripciones del autor del delito dadas previamente por el testigo, el grado de certeza demostrado por el testigo durante la confrontación, y el tiempo transcurrido entre la comisión del delito y la confrontación. . . ."

■ Aplicando esos factores a nuestro caso concluimos que la identificación del apelante por la víctima, aunque en un punto tuviera visos de sugestividad, no era inadmisible. Correspondía al juzgador de los hechos la misión de evaluar esa prueba desde el punto de vista de la credibilidad que la testigo pudiera merecerle. Como se dijo en *Stovall*, supra, y se reitera en *Biggers*, a la pág. 198, "la admisión de prueba de un *show up*, sin más, no viola el debido procedimiento."

En argumentación del segundo error el apelante nos cita a *Pueblo* v. *Arroyo Agosto*, 93 D.P.R. 445, 451 (1966), donde dijimos:

"En este caso la prueba de corroboración presentada por el Fiscal, que consistió en el testimonio ya reseñado del detective Félix B. Donato es insuficiente para corroborar la declaración de la mujer agraviada. Tal testimonio, por sí mismo y sin tomar en consideración la declaración de la mujer agraviada, que es la única otra prueba de cargo, no establece la relación del acusado con la comisión del delito imputádole. El detective declaró que llegó al sitio de los hechos y la señora Dolores Rivera Marcano le manifestó que por poco 'me violan y me matan'. No le dijo quien fue el autor del ataque y aunque describió a una persona, nada hay en el récord que demuestre que esa descripción corresponde al acusado apelante. A lo sumo su testimonio tendió a probar la comisión del delito o las circunstancias del mismo, pero esto no es prueba suficiente de corroboración bajo la Regla 154."

■ La víctima relató lo ocurrídole a su compañera de apartamiento en la primera oportunidad que tuvo para ello. *Pueblo* v. *Echevarría Rivera*, 96 D.P.R. 159, 160 (1968); *Pueblo* v. *Oquendo*, 83 D.P.R. 234, 241 (1961); *Pueblo* v. *Márquez*, 64 D.P.R. 371, 380–381 (1945). En ese momento,

en palabras de su compañera (T.E. pág. 38) : "Estaba muy descontrolada emocionalmente, estaba temblando y llorando." La testigo de corroboración expresó (T.E. pág. 40) :

"Estaba histérica; una vez yo la calmé y ella se bajó, digo, se bañó, empezamos a hablar con ella sobre eso; que había llegado de su viaje e iba a subir arriba y notó que la luz del pasillo no estaba prendida; yo había llegado una hora antes y la luz del pasillo había estado prendida, ella viró hacia la esquina para subir por las escaleras y un hombre la agarró por el cuello y la empujó contra la pared, al lado del teléfono y le dijo si gritaba la mataría, yo le pregunté cómo era esa persona y ella me dijo que era más alta que yo, delgado, no muy grueso, tenía pelo corto y era muy oscuro de tez; él quería dinero y ella no tenía ninguno así que le quitó el reloj, entonces le llevó afuera por el frente del edificio y hacia atrás y le atacó sexualmente detrás del edificio y le dijo si gritaba la mataría."

■ Esa misma descripción la dio la víctima a la policía. No se hizo constar para el récord una descripción del apelante. Nos parece obvio que de no corresponder a la dada por la víctima y por la testigo de corroboración, ello hubiese sido un argumento natural en la diligente defensa que tuvo el apelante ante el tribunal a quo. En ausencia de una indicación en contrario debemos presumir que la descripción del apelante no se aparta sustancialmente de la dada por la víctima a su amiga al hacerle la manifestación espontánea que hemos transcrito.

La expresión en *Pueblo* v. *Arroyo Agosto,* supra a la pág. 451, de que "nada hay en el récord que demuestre que esa descripción corresponde al acusado apelante" no pasa de ser *obiter dicta* y no deberá interpretarse como que necesariamente deba aparecer del récord, afirmativamente, que la descripción del acusado concuerda con la dada por la víctima. En ausencia de indicación en contrario, aplicaremos la presunción aquí expresada.

En cuanto a que la pena impuesta fuera excesiva, cabe señalar que el Art. 258 del Código Penal, 33 L.P.R.A. sec.

964, no señala un máximo para el delito de ·violación. No obstante, estimamos que se cumplen mejor los fines de la justicia *modificándola a una pena de 15 a 25 años de presidio con trabajos forzosos y, así modificada, confirmarla.*

Se dictará sentencia de conformidad.

Los Jueces Asociados Señores Cadilla Ginorio y Díaz Cruz, disienten en cuanto a la modificación de la pena.