Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>ÁNGEL YAMIL SÁNCHEZ PÉREZ<br><br>Apelante<br><br>_____<br><br>EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>ÁNGEL YAMIL SÁNCHEZ PÉREZ<br><br>Recurrido | KLAN202200297<br><br><br><br><br><br><br><br><br><br>Consolidado con<br><br><br><br><br><br>KLCE202200484 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.:<br>L BD2010G0067 al 0069,<br>L IC2010G0015 al 0016<br>LLA2010G0048 al 0049<br><br>Sobre:<br>Art. 198 CP, Art. 199 CP, Art. 122 CP, Art. 5.04 LA, Art. 5.15 LA<br><br>Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.:<br>L BD2010G0067 al 0069,<br>L IC2010G0015 al 0016<br>LLA2010G0048 al 0050<br><br>Sobre:<br>Art. 198 CP,<br>Art. 199 CP (2 CS),<br>Art. 122 CP (2CS),<br>Art. 5.04 LA,<br>Art. 5.15 LA (2 CS) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2024.

### I.

Tenemos ante nuestra consideración dos (2) recursos que, debido a su intrínseca relación fueron consolidados. Por medio de

una apelación criminal, compareció el señor Ángel Y. Sánchez Pérez (señor Sánchez Pérez o apelante) en solicitud de que revisemos unas *Reconsideraciones de Sentencias* dictadas el 5 de abril de 2022 por el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI).[1] En estas, tras un veredicto de culpabilidad y ser declarado culpable y convicto al apelante por un (1) cargo por robo, según tipificado en el Art. 198 del Código Penal de 2004, 33 LPRA sec. 4826, vigente al momento de los hechos; dos (2) cargos por robo agravado de segundo grado, Art. 199 del Código Penal de 2004, *supra*, sec. 4827; dos (2) cargos por agresión grave de tercer grado, Art. 122 del Código Penal de 2004, *supra*, sec. 4750; un (1) cargo por portación y uso de armas de fuego sin licencia, Art. 5.04 de la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, según enmendada, 25 LPRA sec. 458c (Ley de Armas), vigente al momento de los hechos, y tres (3) cargos por disparar o apuntar armas, Art. 5.15 de la Ley de Armas, *supra*, sec. 458n, el TPI le impuso una pena total de cincuenta y cinco (55) años de reclusión. A saber, veinte (20) años de reclusión por los delitos de robo, robo agravado y agresión grave, y treinta y cinco (35) años de reclusión por los delitos de portación y uso de armas de fuego sin licencia y disparar o apuntar armas.

Por otro lado, mediante una petición de *certiorari*, compareció el Pueblo de Puerto Rico, representado por la Oficina del Procurador General (Procurador) en solicitud de que corrijamos las *Reconsideraciones de Sentencias* dictadas el 5 de abril de 2022.[2] Esto, puesto que el TPI ordenó el cumplimiento de todas las penas de forma concurrente y sin duplicarse, en contravención con el Artículo 7.03 de la Ley de Armas, *supra*, sec. 460b.

---

[1] Apéndice de *Petición de Certiorari*, Anejo XXI, págs. 89-115. Archivadas y notificadas el 28 de abril de 2022.

[2] *Íd.*

Con el beneficio de la comparecencia de ambas partes y por contar con la transcripción de la prueba oral (TPO), nos encontramos en posición de resolver. Se adelanta que procede dejar sin efecto las sentencias apeladas y ordenar un nuevo juicio para el señor Sánchez Pérez, puesto que las referidas sentencias fueron producto de un veredicto de culpabilidad rendido por un jurado no unánime. Esto, con excepción de la convicción por los dos (2) cargos por el delito de agresión grave de tercer grado, en los que fue hallado culpable por unanimidad. De otra parte, ante lo resuelto, se deniega la expedición del auto de *certiorari* solicitado por el Procurador.

Veamos el trasfondo fáctico y procesal del asunto ante nuestra consideración.

**II.**

Surge de los autos originales que el 26 de febrero de 2010, el Ministerio Público presentó nueve (9) denuncias contra el señor Sánchez Pérez por la comisión de los delitos de robo, Art. 198 del Código Penal de 2004, *supra*, sec. 4826; robo agravado, Art. 199 del Código Penal de 2004, *supra*, sec. 4827; agresión grave de tercer grado, Art. 122 del Código Penal de 2004, *supra*, sec. 4750; portación y uso de armas de fuego sin licencia, Art. 5.04 de la Ley de Armas, *supra*, sec. 458c, y disparar o apuntar armas, Art. 5.15 de la Ley de Armas, *supra*, sec. 458n.[3] En síntesis, al apelante se le imputó que allá para el 18 de enero de 2010, en el pueblo de Lares, actuando en común y mutuo acuerdo con otras personas y de manera ilegal, voluntaria y criminal, portó, condujo, transportó y utilizó un arma de fuego sin tener licencia y la utilizó para la comisión de delitos graves contra los señores Miguel A. Rodríguez López (señor Rodríguez López), Carlos Enrique Ramírez Arocho (señor Ramírez Arocho) y Edgardo Crespo Rodríguez (señor Crespo Rodríguez). Se le acusó que,

---

[3] *Íd.*, Anejo I, págs. 1-10.

con el propósito de cometer el delito de robo agravado, apuntó con el arma de fuego al señor Rodríguez López; disparó en el área del muslo del señor Ramírez Arocho, causándole una herida que requirió hospitalización y/o tratamiento prolongado, y/o generó un daño permanente, y, por dos (2) ocasiones, disparó en la pierna izquierda del señor Crespo Rodríguez, causándole una herida y fractura que requirió operación, hospitalización y/o tratamiento prolongado, y/o generó un daño permanente. A su vez, que mediante el empleo de violencia e intimidación, el apelante se apropió de $400.00 pertenecientes al señor Rodríguez López y $1.00 perteneciente al señor Crespo Rodríguez, sustrayéndolos de la inmediata presencia y en contra de la voluntad de los perjudicados. Asimismo, que mediante violencia e intimidación, intentó apropiarse de bienes muebles pertenecientes al señor Ramírez Arocho, malográndose su propósito por circunstancias ajenas a la voluntad del señor Sánchez Pérez.

El juicio en su fondo se celebró durante los días 13, 14 y 15 de septiembre de 2010. Como prueba de cargo, el Ministerio Público ofreció el testimonio del agente Omar Román Ríos, los señores Ramírez Arocho, Crespo Rodríguez y Rodríguez López y del sargento Héctor Natal Santiago. A continuación, se sintetiza lo declarado por los testigos:

**Agente Román Ríos**

El agente Román Ríos laboró para la División de Robos del Cuerpo de Investigaciones Criminales (CIC) de Utuado.[4] Testificó que el 18 de enero de 2010, aproximadamente a las 10:00 p.m., investigó un robo con dos (2) heridos de balas en el cafetín *La Curva*, ubicado en la carretera 4453 del barrio Piletas Arce en el pueblo de Lares.[5] En la escena, se ocuparon tres (3) casquillos de bala calibre 9mm y un

---

[4] TPO del 13 de septiembre de 2010, pág. 26, líneas 6-11.
[5] *Íd.*, pág. 27, líneas 6-10.

plomo.[6] Identificó que el lugar estaba bastante alumbrado y que había bastante sangre en área.[7] De su investigación se arrojó que como a eso de las 9:00 p.m., el señor Rodríguez López, dueño de *La Curva*, estaba frente al cafetín con dos (2) clientes, los señores Ramírez Arocho y Crespo Rodríguez, cuando de un vehículo verde oscuro, estilo *pick-up*, en el que abordaban tres (3) personas, dos (2) individuos con el rostro cubierto anunciaron "Esto es un asalto, dame, dame los chavos", disparando en una (1) ocasión al señor Ramírez Arocho y en dos (2) ocasiones al señor Crespo Rodríguez, a quien también golpearon con la culata del arma de fuego.[8] Posterior a los disparos, el señor Crespo Rodríguez les entregó $1.00 que tenía en el bolsillo y el señor Rodríguez López les entregó aproximadamente $400.00.[9] Acto seguido, los sospechosos se fueron corriendo del lugar. Uno de los individuos identificados como parte de los sospechosos de los hechos delictivos fue el señor Sánchez Pérez, conocido como *Oreja de pastelillo*, quien previo a los hechos delictivos, estaba en *La Curva* jugando billar con los otros sospechosos y los perjudicados.[10] En la investigación, el señor Ramírez Arocho identificó al apelante como una persona delgada de aproximadamente seis pies de altura, cuyo rostro estaba cubierto de la nariz hacia abajo, vestido con una camiseta negra, una gorra y un pañuelo.[11] El señor Ramírez Arocho identificó al acusado por su vestimenta y voz como una de las personas que jugó billar con él previo a los hechos delictivos.[12] Como parte de la investigación, el 23 de febrero de 2010, se realizó una rueda de identificación de voces en la que el señor Ramírez Arocho identificó la voz del señor Sánchez

---

[6] *Íd.*, pág. 27, líneas 20-23; pág. 28, líneas 24-25; pág. 29, líneas 2-3.
[7] *Íd.*, pág. 29, líneas 3-24.
[8] *Íd.*, pág. 30, líneas 10-23; pág. 35, líneas 7-25; pág. 36, líneas 2-19; pág. 37, líneas, 8-16; pág. 38, líneas 10-13; pág. 41, línea 25; pág. 47, líneas 12-19; pág. 62, líneas 7-21.
[9] *Íd.*, pág. 39, líneas 6-11; pág. 62, líneas 18-21.
[10] *Íd.*, pág. 42, líneas 3-25; pág. 43, líneas 16-25; pág. 44, líneas 2-25; pág. 45, líneas 22-25.
[11] *Íd.*, pág. 61, línea 25; pág. 62, líneas 2-7.
[12] *Íd.*, pág. 62, líneas 24-25.

Pérez como la persona que le disparó.[13] Destacó que, dado que el señor Ramírez Arocho era músico, pudo retener la voz del sospechoso, particularmente por la pronunciación de la "ch" en la palabra "chavos". En el contrainterrogatorio, el agente Román Ríos afirmó que en la rueda de confrontación utilizaron a otros agentes de la Comandancia de Utuado con edades distintas a la del señor Sánchez Pérez.[14] Sin embargo, el señor Ramírez Arocho no demostró datos específicos de la voz del sospechoso para que el agente Román Ríos escogiera las otras personas que participaron en la rueda de confrontación, sino que no era fina ni gruesa, una voz normal con un timbre particular que no pudo detallar.[15] En el *Acta sobre Rueda de Confrontación* no existió descripción alguna sobre la voz del sospechoso.[16] Por otra parte, los señores Rodríguez López y Crespo Rodríguez no pudieron identificar al sospechoso por su apariencia física ni por la voz.[17]

**Señor Ramírez Arocho**

El señor Ramírez Arocho testificó que era músico de profesión.[18] Señaló que previo a los hechos delictivos, estaba jugando billar con el señor Sánchez Pérez y los otros sospechosos.[19] Esto, como por alrededor de ocho (8) minutos, en los que escuchó a los sospechosos comentar sobre lo ocurrido en la mesa de billar.[20] Estableció que cuando el señor Sánchez Pérez estaba jugando billar previo a los hechos delictivos, tenía una gorra, un pañuelo negro debajo de la gorra, una camisa negra con un logo blanco y un pantalón corto oscuro.[21] Sostuvo que el apelante sostuvo una

---

[13] *Íd.*, pág. 70, líneas 10-25; pág. 71, líneas 2-5; pág. 84, línea 23; pág. 11, líneas 11-15; pág. 90, líneas 11-21.

[14] *Íd.*, pág. 109, líneas 15-25; pág. 110, líneas 1-9.

[15] *Íd.*, pág. 110, líneas 10-25; pág. 112, líneas 14-16; pág. 115, líneas 14-15.

[16] *Íd.*, pág. 131, líneas 19-25.

[17] *Íd.*, pág. 152, líneas 2-25; pág. 153, líneas 22-25.

[18] *Íd.*, pág. 163, líneas 11-12.

[19] *Íd.*, pág. 171, líneas 9-12; pág. 173, líneas 4-25.

[20] *Íd.*, pág. 198, líneas 13-25.

[21] *Íd.*, pág. 173, líneas 20-25; pág. 174, línea 2.

conversación con él durante el juego de billar.[22] Testificó que posterior al juego, los tres (3) sospechosos se fueron del cafetín y los tres (3) perjudicados permanecieron jugando.[23] Así las cosas, el señor Ramírez Arocho declaró que cuando el señor Rodríguez López cerró el cafetín, comenzó a caminar hacia su casa cuando observó que le tiraron una guagua Chevrolet CE10, color verde oscuro, estilo *pick up*, con cristales ahumados que venía a alta velocidad, en la que se bajaron dos (2) individuos: uno en dirección hacia su persona y otro hacia el señor Crespo Rodríguez.[24] Identificó que la persona que se direccionó hacia su persona le gritó "esto es un asalto" y le disparó en el muslo izquierdo.[25] Posterior a ello, cayó al suelo y el sospechoso que le disparó le gritó "dame los chavos, dame los chavos", apuntándole con el arma de fuego en la cara. Aseveró que al contestarle que no poseía dinero y que le rebuscara, le apuntó con el arma a los otros dos (2) perjudicados.[26] Manifestó que la persona que le disparó tenía la misma constitución física y vestimenta que el señor Sánchez Pérez cuando estaba jugando billar con el testigo, pero con la camisa negra con el logo blanco a la inversa.[27] Declaró que, debido al sangrado, fue llevado al Hospital de Área en Lares y al Centro Médico de Río Piedras para tratamiento y posteriormente estuvo convaleciendo en su hogar por alrededor de dos (2) meses sin trabajar, dependiendo de su madre y esposa para poder bañarse.[28]

**Señor Crespo Rodríguez**

El señor Crespo Rodríguez declaró que en la noche del 18 de enero de 2010 lo asaltaron en el negocio del señor Rodríguez López.[29] Puntualizó que el lugar donde ocurrieron los hechos delictivos estaba

---

[22] *Íd.*, pág. 178, líneas 18-20.
[23] *Íd.*, pág. 179, líneas 13-19.
[24] *Íd.*, pág. 179, líneas 20-25; pág. 180, línea 1-9.
[25] *Íd.*, pág. 180, líneas 7-17.
[26] *Íd.*, pág. 183, líneas 14-25; pág. 184, líneas 2-5.
[27] *Íd.*, pág. 176, líneas 9-10.
[28] *Íd.*, pág. 181, líneas 12-15; pág. 186, líneas 14-24.
[29] *Íd.*, pág. 227, líneas 23-25; pág. 228, líneas 7-10.

bastante alumbrado. Adujo que llegó una guagua ligera de la cual se bajaron dos (2) personas requiriendo dinero; uno se direccionó hacia su persona y otro hacia el señor Ramírez Arocho.[30] Sostuvo que el incidente ocurrió entre cuatro (4) a cinco (5) minutos.[31] Por otro lado, reconoció que el señor Sánchez Pérez era de su barrio, quien era conocido como *Oreja de pastelillo*.[32] Además, identificó que otro sospechoso, conocido como *Chayanne,* le disparó con una pistola negra por dos (2) ocasiones.[33] Testificó que *Chayanne* no le disparó al señor Ramírez Arocho, pero no pudo reconocer la identidad del otro sospechoso de los hechos delictivos.[34] Declaró que tras recibir los disparos, se le fracturó el fémur, por lo que tuvo que ser operado.[35]

**Señor Rodríguez López**

El señor Rodríguez López testificó que conoce al señor Sánchez Pérez y a los otros dos (2) sospechosos del delito desde hacía bastante tiempo.[36] Expresó que en la noche del 18 de enero de 2010, de una guagua se bajaron dos individuos con pistola.[37] Acentuó que al asustarse al ver que les dispararon a los señores Ramírez Arocho y Crespo Rodríguez, trató de no mirar a los sospechosos de los hechos delictivos y les otorgó el dinero para evitar que continuaran disparando, razón por la cual no pudo reconocer su identidad ni voz.[38]

**Sargento Natal Santiago**

El sargento Natal Santiago atestó que labora para la Sección de Inteligencia de la Policía de Puerto Rico, grabando distintas investigaciones.[39] Su testimonio se basó en exponer el proceso de grabación de la rueda de identificación de voces.

---

[30] *Íd.*, pág. 233, líneas 7-19; pág. 238, línea 15.
[31] *Íd.*, pág. 248, líneas 2-7.
[32] *Íd.*, pág. 229, línea 2-16.
[33] *Íd.*, pág. 239, líneas 15-20.
[34] *Íd.*, pág. 246, líneas 7-16.
[35] *Íd.*, pág. 236, líneas 20-25; pág. 237, líneas 10-12.
[36] TPO del 14 de septiembre de 2010, pág. 9, líneas 13-22.
[37] *Íd.*, pág. 10, líneas 22-25.
[38] *Íd.*, pág. 24, líneas 21-25; pág. 25, líneas 2-25; pág. 35, líneas 19-25.
[39] *Íd.*, pág. 38, líneas 2-20.

Luego de celebrarse el juicio en su fondo, un jurado encontró culpable al señor Sánchez Pérez por todos los delitos imputados. A saber, el jurado rindió un veredicto de culpabilidad por mayoría (11-1) por el cargo por robo, los dos (2) cargos por robo agravado, el cargo por portación y uso de armas de fuego sin licencia, y los tres (3) cargos por disparar o apuntar armas.[40] A su vez, para los dos (2) cargos por agresión grave de tercer grado, el jurado encontró culpable al apelante por unanimidad. Así las cosas, el TPI aceptó dicho veredicto y declaró convicto al apelante.

Tras varios trámites procesales, el 5 de noviembre de 2010, el TPI le impuso al apelante las siguientes penas por cada cargo:[41]

a) 5.5 años de reclusión por robo, a cumplirse concurrentemente con todos los casos
b) 20 años de reclusión por robo agravado, a cumplirse concurrentemente con todos los casos
c) 20 años de reclusión por robo agravado, a cumplirse concurrentemente con todos los casos
d) 10 años de reclusión por portación y uso de armas de fuego sin licencia, a cumplirse consecutivamente con tres (3) casos por disparar o apuntar armas y concurrentemente con los demás casos
e) 5 años de reclusión por disparar o apuntar armas, a cumplirse consecutivamente con dos (2) casos por el mismo delito y concurrente con los demás casos
f) 10 años de reclusión por disparar o apuntar armas, a cumplirse consecutivamente con dos (2) casos por el mismo delito y concurrente con los demás casos
g) 10 años de reclusión por disparar o apuntar armas, a cumplirse consecutivamente con dos (2) casos por el mismo delito y concurrente con los demás casos
h) 5.5 años de reclusión por agresión grave de tercer grado, a cumplirse concurrentemente con todos los casos
i) 5.5 años de reclusión por agresión grave de tercer grado, a cumplirse concurrentemente con todos los casos

El TPI eximió al apelante de la pena especial de cada caso. Esto, al considerar que del *Informe Pre-sentencia* emergió que el señor Sánchez Pérez no trabajaba y era un dependiente de sus progenitores, por lo que el Foro Primario concibió injusto que los progenitores sufragaran dichas penas.[42]

Entre otros pronunciamientos, el Foro Primario declaró "No Ha Lugar" a la solicitud de reconsideración del Ministerio Público para

---

[40] *Íd.*, Anejo III, págs. 20-22.
[41] *Íd.*, Anejo VII, págs. 28-29; *Íd.*, Anejo VIII, págs. 30-38.
[42] TPO del 5 de noviembre de 2010, pág. 133, líneas 25-29.

que le aplicare la duplicidad a las penas relacionadas a los casos por la Ley de Armas.

Aproximadamente diez (10) años más tarde, el 28 de agosto de 2020, el señor Sánchez Pérez presentó una *Moción al amparo de la Regla 192.1 de Procedimiento Civil.*[43] En esta, el apelante solicitó dejar sin efecto las sentencias dictadas el 5 de noviembre de 2010 y ser re-sentenciado, puesto que se le infringió su debido proceso de ley por tener una representación inadecuada en la etapa apelativa. Esto, debido a que su representante legal incumplió reiteradamente en la tramitación del recurso de apelación KLAN201001803, el cual fue desestimado por un Panel Hermano de este Tribunal.

Ante tal solicitud, el Ministerio Público argumentó que el apelante debía ser re-sentenciado, para que le duplicara las penas por la Ley de Armas, a 20 años de reclusión por el cargo por portación y uso de armas de fuego sin licencia, y a 10 años de reclusión por uno de los cargos por disparar o apuntar armas. A la vez, el Ministerio Público solicitó que el TPI dictara que las penas impuestas al apelante bajo la Ley de Armas, *supra*, se cumplieran consecutivamente entre sí y con las penas bajo cualquier otra ley. Por último, peticionó que se le impusiera al apelante una pena especial por cada una de las sentencias.[44]

El 29 de marzo de 2021, el TPI emitió una *Resolución*, en la que declaró Con Lugar la petición del señor Sánchez Pérez.[45] Esto, tras concluir que procedía dejar sin efecto las sentencias dictadas y re-sentenciar al peticionario al carecer de una representación adecuada en la etapa apelativa.

El 3 de junio de 2021, el Foro Primario emitió una *Resolución* en la que declaró No Ha Lugar a la solicitud del Ministerio Público de

---

[43] *Íd.*, Anejo IX, págs. 39-43.
[44] *Íd.*, Anejo X, págs. 44-46; *Íd.*, Anejo XI, págs. 47-50.
[45] *Íd.*, Anejo XII, págs. 51-56. Archivada y notificada el 6 de abril de 2021.

duplicar las penas bajo la Ley de Armas, *supra*.[46] Esto, debido a que consideró que el Ministerio Público debió recurrir oportunamente ante este foro para corregir las sentencias luego de que su solicitud fuera originalmente rechazada por el tribunal sentenciador.

Posteriormente, el 5 de abril de 2022, se celebró una vista de reconsideración de sentencia, en la que se le impuso al señor Sánchez Pérez las siguientes penas por cada cargo:[47]

a) 5.5 años de reclusión por robo, concurrentes con los casos bajo el Código Penal de 2004, *supra*, y consecutivos con los casos bajo la Ley de Armas.
b) 20 años de reclusión por robo agravado, concurrentes con los casos bajo el Código Penal de 2004, *supra*, y consecutivos con los casos bajo la Ley de Armas.
c) 20 años de reclusión por robo agravado, concurrentes con los casos bajo el Código Penal de 2004, *supra*, y consecutivos con los casos bajo la Ley de Armas.
d) 10 años de reclusión por portación y uso de armas de fuego sin licencia, consecutivos con otros casos bajo la Ley de Armas, y concurrentes con los demás casos.
e) 5 años de reclusión por disparar o apuntar armas, consecutivos con otros casos bajo la Ley de Armas, y concurrentes con los demás casos.
f) 10 años de reclusión por disparar o apuntar armas, consecutivos con otros casos bajo la Ley de Armas, y concurrentes con los demás casos.
g) 10 años de reclusión por disparar o apuntar armas, consecutivos con otros casos bajo la Ley de Armas, y concurrentes con los demás casos.
h) 5.5 años de reclusión por agresión grave de tercer grado, concurrentes con los casos bajo el Código Penal de 2004, y consecutivos con los casos bajo la Ley de Armas.
i) 5.5 años de reclusión por agresión grave de tercer grado, concurrentes con los casos bajo el Código Penal de 2004, y consecutivos con los casos bajo la Ley de Armas.

Inconforme, el 19 de abril de 2022, el señor Sánchez Pérez acudió ante nos mediante una apelación criminal y nos planteó que el TPI incidió en cometer los siguientes errores:

**A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRAR CULPABLE AL APELANTE EN VIRTUD DE UNA PRUEBA QUE NO DERROTÓ LA PRESUNCIÓN DE INOCENCIA Y QUE MUCHO MENOS ESTABLECIÓ SU CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE.**

**B. CUALQUIER OTRO ERROR DE DERECHO QUE PUEDA RECLAMAR EN SU MOMENTO EL ABOGADO APELATIVO QUE SUMA MI REPRESENTACIÓN LEGAL AL MOMENTO DE PRESENTAR EL ALEGATO CORRESPONDIENTE. {HENDERSON V. US, 133 S CT. 1121 (2013) Y PUEBLO V. SOTO RÍOS, 95 D.P.R. 483; (1967)}**

---

[46] *Íd.*, Anejo XV, págs. 67-71. Archivada y notificada el 4 de junio de 2021.
[47] *Íd.*, Anejo XXI, págs. 89-115. Archivadas y notificadas el 28 de abril de 2022.

Por su parte, el 4 de mayo de 2022, el Procurador General acudió ante nos por virtud de una *Petición de Certiorari* y señaló que el TPI cometió los siguientes errores:

**A. EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL REHUSAR CORREGIR UNA SENTENCIA QUE ES PATENTEMENTE ILEGAL, PORQUE ATENTA CONTRA EL TEXTO CLARO DEL ARTÍCULO 7.03 DE LA LEY DE ARMAS DE PUERTO RICO, AL ORDENAR SU CUMPLIMIENTO DE FORMA CONCURRENTE Y NO IMPONER LA PENA DUPLICADA EN EL CASO L LA2010048.**

**B. EL TRIBUNAL DE PRIMERA INSTANCIA INCIDIÓ AL APLICAR INFLEXIBLEMENTE LA LEY DEL CASO, A PESAR DE QUE ESTÁ FRENTE A UNA SENTENCIA QUE ES ABIERTAMENTE CONTRARIA A LA LEY.**

En atención a los errores planteados por ambas partes, procedemos a exponer la normativa jurídica atinente a este recurso.

### III.

### A. Apelación criminal

En nuestro ordenamiento jurídico, toda persona acusada tiene derecho a apelar cualquier sentencia penal que recaiga en su contra. *Pueblo v. Torres Medina*, 211 DPR 950, 959 (2023); *Pueblo v. Serbiá*, 78 DPR 788, 791-792 (1955). La apelación es un privilegio estatutario que adquirió un carácter cuasi-constitucional y forma parte del debido proceso de ley. *Pueblo v. Serbiá, supra*, pág. 792; *Pueblo v. Rivera Ortiz*, 209 DPR 402, 419 (2022); *Pueblo v. Esquilín Díaz*, 146 DPR 808, 815-816 (1998); *Pueblo v. Prieto Maysonet*, 103 DPR 102, 104 (1974). Una vez este Tribunal de Apelaciones adquiere jurisdicción, tenemos el deber de resolver el recurso de apelación en sus méritos. *Pueblo v. Colón Canales*, 152 DPR 284, 291 (2000). En tal sentido, los tribunales apelativos poseemos la facultad de examinar cualquier error de derecho cometido por el tribunal de instancia, así como cualquier asunto de hecho y derecho. *Pueblo v. Rivera Ortiz, supra*, págs. 421-422; *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002). Pues, como cuestión de derecho, la determinación de probar la culpabilidad de una persona más allá de duda razonable es

revisable, dado que la apreciación de la prueba es un asunto tanto de hecho como de derecho. *Pueblo v. Irizarry, supra*; *Pueblo v. Torres Medina, supra*; *Pueblo v. Rivero Lugo y Almodóvar*, 121 DPR 454, 473 (1988); *Pueblo v. Pagán Díaz*, 111 DPR 608, 621 (1981).

Al evaluar si se probó la culpabilidad de un acusado más allá de duda razonable, es norma trillada que el juzgador de los hechos está en mejor posición para apreciar y aquilatar la prueba presentada. *Pueblo v. Casillas, Torres*, 190 DPR 398, 416 (2014). Por ello, la apreciación de la prueba del juzgador de los hechos merece gran respeto y deferencia por parte de un foro apelativo. *Íd.* Así las cosas, los tribunales apelativos solamente intervendremos con la apreciación de la prueba cuando se demuestre existencia de pasión, prejuicio, parcialidad o error manifiesto. *Íd.* pág. 417; *Pueblo v. Rivera Ortiz, supra*, pág. 422; *Pueblo v. Irizarry, supra*, págs. 788-789. Además, intervendremos cuando surjan serias dudas, razonables y fundadas sobre la culpabilidad de la persona acusada. *Pueblo v. Casillas, Torres, supra*; *Pueblo v. Irizarry, supra*, pág. 789. Sin embargo, "si de un análisis ponderado de la prueba desfilada ante el foro primario surge duda razonable y fundada sobre si la culpabilidad del acusado fue establecida más allá de duda razonable, este Tribunal tiene el deber de dejar sin efecto el fallo o veredicto condenatorio". *Pueblo v. Casillas, Torres, supra*.

Cuando un acusado presenta un recurso de apelación en el que plantea como error insuficiencia de la prueba, así como errores de derecho, los foros apelativos realizaremos un escrutinio de dos (2) partes. *Pueblo v. Ortiz Colón*, 207 DPR 100, 125 (2021). En primer lugar, evaluaremos la alegación de insuficiencia de prueba que, de ser meritoria, procede absolver al acusado. *Íd.* Ahora bien, si el reclamo de insuficiencia de la prueba resulta inmeritorio, procede atender los errores de derecho. *Íd.* En tal eventualidad, si el juicio se celebró por un jurado que emitió un veredicto por mayoría, estamos

obligados a ordenar la celebración de un nuevo juicio, a tenor con la normativa de *Ramos v. Louisiana*, 590 US ___, 140 S. Ct. 1390 (2020) y *Pueblo v. Torres Rivera II*, 204 DPR 288 (2020).

### B. <u>Derecho a juicio por jurado</u>

En otro extremo, debido a que el juicio por un jurado imparcial garantizado por la Sexta Enmienda de la Constitución federal es un derecho fundamental, los estados deben asegurar dicho derecho por virtud del debido proceso de ley de la Decimocuarta Enmienda. *Duncan v. Louisiana*, 391 US 145 (1968). Por ello, el derecho a juicio por jurado aplica en toda su extensión en Puerto Rico. *Pueblo v. Torres Rivera II*, supra, pág. 304; *Pueblo v. Santana Vélez*, 177 DPR 61, 65 (2009); *Pueblo v. Laureano*, 111 DPR 447 (1984).

Ahora bien, para lograr la convicción de una persona acusada por un delito grave se requiere que el jurado emita un veredicto por unanimidad, por ser una protección procesal consustancial al derecho fundamental de juicio por jurado, extensivo a los tribunales estatales. *Pueblo v. Torres Rivera II, supra*, pág. 301; véase *Ramos v. Louisiana, supra*. En igual proporción decisoria, un veredicto de no culpabilidad se tiene que alcanzar por unanimidad para no quebrantar la Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico. *Pueblo v. Centeno*, 208 DPR 1, 20 (2021). Pues, la unanimidad es una cualidad inmanente del derecho a un juicio por jurado. *Pueblo v. Torres Rivera II, supra*. Esta norma es aplicable retroactivamente a los casos cuyas sentencias no hayan advenido final y firme, dado que están pendientes de revisión. *Íd.*, págs. 305-306; *Pueblo v. Rosario Paredes*, 209 DPR 155, 164-165 (2022).

### C. <u>Rueda de identificación de voces</u>

Una de las etapas más críticas del procedimiento criminal es la identificación del imputado de un delito. *Pueblo v. Toro Martínez*, 200 DPR 834, 863 (2018); *Pueblo v. Ramos y Álvarez*, 122 DPR 287, 311 (1988); *Pagán Hernández v. Alcaide*, 102 DPR 101, 112 (1974). Pues,

para que exista un juicio justo e imparcial, se debe garantizar debidamente la forma de identificar a la persona imputada de la comisión de un delito. *Pueblo v. Gómez Incera*, 97 DPR 249, 252 (1969). Resulta importante destacar que nunca puede haber una convicción sin que se presente prueba que conecte a la persona imputada como la responsable de los hechos delictivos que se le imputan, más allá de duda razonable. *Pueblo v. Rodríguez Maysonet*, 119 DPR 302, 309 (1987).

Nuestro ordenamiento jurídico provee para que las personas perjudicadas o los testigos oculares puedan identificar a la persona que cometió un delito cuando no lo conoce. *Pueblo v. Toro Martínez*, 200 DPR 834, 863 (2018). En tal sentido, la Regla 252 de Procedimiento Criminal, 34 LPRA Ap. II, R. 252, rige lo concerniente a la identificación de los sospechosos de un delito previo al juicio, sea mediante la rueda de detenido o la identificación mediante fotografías.

Por otro lado, el Estado puede valerse de otros métodos para identificar a la persona sospechosa de cometer un delito. *Pueblo v. Ramos y Álvarez, supra*, pág. 310. Como método alterno de identificación, se encuentra la rueda de identificación de voces. *Íd.* Al realizar una rueda de identificación de voces, se le pide a la persona sospechosa que emita un sonido o una frase para identificarlo por un testigo ocular que previamente tuvo la oportunidad de escuchar la voz del perpetrador de un hecho delictivo. *Pueblo v. Hernández González*, 175 DPR 274, 306 (2009). Es norma reiterada que "[e]n el contexto de una rueda de detenidos, pedirle a un sospechoso que emita alguna palabra, frase o sonido, que incluya aquello que alegadamente enunció el autor de un delito, no constituye evidencia de carácter testimonial protegida por la Quinta enmienda de la Constitución estadounidense". *Íd.,* pág. 305. Ahora bien, el Tribunal

Supremo resolvió lo siguiente con respecto a la rueda de identificación de voces:

> [U]na rueda de identificación de voces debe ser la excepción y celebrarse tan sólo en circunstancias extraordinarias en las que el testigo verdaderamente lo necesite o cuando no haya otro modo de identificación; debe procurarse una descripción previa de la voz que escuchó el testigo, de manera que las voces que se escojan para la rueda tengan características similares; deben participar al menos cinco personas incluyendo al acusado o sospechoso; los testigos no pueden ver a los componentes de la rueda; si hay más de un testigo, no pueden comunicarse entre ellos; deben grabarse las voces de los componentes de la rueda para perpetuarlas, de manera que el tribunal revisor pueda considerar si hubo algún factor sugestivo; debe evitarse el uso de las palabras o sonidos que fueron emitidos durante el crimen; en la medida de lo posible y si surge de los hechos delictivos, debe reproducirse en la rueda cualquier acción, o utilizarse cualquier pieza de ropa o aparato que pueda alterar la voz de los participantes de manera que las voces se aproximen a la escuchada durante los hechos. *Íd.*, págs. 308-309.

A saber, dado que el procedimiento para identificar a un sospechoso de un delito puede macularse por circunstancias que afectan en sentido de percepción, deben existir salvaguardas necesarias que eviten malograr la justicia. *Pueblo v. Gómez Incera, supra*, pág. 253. De lo contrario, "la admisión en evidencia de prueba viciada sobre identificación puede constituir una violación del debido procedimiento de ley". *Pueblo v. Rodríguez Maysonet, supra.* A tal efecto, la persona acusada puede solicitar la supresión de una investigación por el proceso estar plagado de errores, ser sugestivo, o estar falto de confiabilidad. *Íd.*, pág. 308; *Pueblo v. Toro Martínez, supra.* No obstante, la determinar sobre la violación del debido proceso de ley durante el procedimiento de identificación depende de la totalidad de las circunstancias presentes en el mismo y los hechos particulares del caso. *Pueblo v. Rodríguez Maysonet, supra*, pág. 309-310; *Pueblo v. Hernández González, supra*, págs. 289-290; *Pueblo v. Peterson Pietersz*, 107 DPR 172, 183 (1978). No se violenta el debido proceso de ley si están presentes los siguientes elementos de confiabilidad: (1) la oportunidad de observación que tuvo el testigo; (2) el grado de atención que prestó durante los sucesos; (3) la

fidelidad de la descripción y los detalles que ofreció al ser investigado; (4) el nivel de certeza que demostró cuando identificó a la persona sospechosa, y (5) el tiempo transcurrido entre la comisión del hecho delictivo y la confrontación posterior con la persona sospechosa. *Pueblo v. Peterson Pietersz, supra; Pueblo v. Gómez Incera, supra.* Además, al analizar los errores en el procedimiento de identificar a una persona sospechosa, **"[l]o importante no es el método utilizado en la identificación, sino que la misma sea libre, espontánea y confiable**" (Énfasis nuestro). *Pueblo v. Ramos Delgado,* 122 DPR 287, 312 (1988).

### D. Corrección de una sentencia ilegal

Es norma trillada que una sentencia ilegal puede corregirse en cualquier momento. E. L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Vol. III, Ed. Forum, 1993, pág. 561. Una sentencia resulta ser ilegal cuando se emite en violación a los términos y las condiciones que limitan la pena de convicción por cada delito tipificado en una ley penal. *Íd.,* pág. 562. En tal sentido, una sentencia es ilegal cuando el tribunal impuso que se cumpla concurrentemente con otra, cuando la ley dispone cumplirse de forma consecutiva. *Íd.,* pág. 563.

En *Pueblo v. Bigio Pastrana,* 116 DPR 748, 762 (1985), el Tribunal Supremo resolvió que el Ministerio Público debe hacer el planteamiento de la ilegalidad de una sentencia ante el tribunal sentenciador, no dentro del recurso de apelación que interponga la persona acusada. *Íd.*

### E. Agresión grave

El Artículo 121 del Código Penal de 2004, *supra,* sec. 4749, disponía que cometía el delito menos grave de agresión, toda persona que ilegalmente, por cualquier medio o forma, causara a otra una lesión a su integridad corporal. Ahora bien, el Artículo 122 del Código Penal de 2004, *supra,* sec. 4750, establecía que se incurría en el delito

grave de cuarto grado de agresión grave si la agresión antes descrita ocasionaba una lesión que requería atención médica, ayuda profesional especializada o tratamiento ambulatorio, aunque no deje un daño permanente. Por otro lado, se incurría en delito grave de tercer grado si la agresión ocasionaba una lesión que requería hospitalización, tratamiento prolongado o generaba un daño permanente. *Íd.* Esta modalidad del delito incluía lesiones mutilantes en las que se transmitía una enfermedad, síndrome o condición de tratamiento físico prolongado o requerían un tratamiento psico-emocional prolongado. *Íd.*

### F. Robo

Por otro lado, de conformidad con el Artículo 198 del Código Penal de 2004, *supra*, sec. 4826, cometía el delito grave de tercer grado de robo, toda persona que se apropiara ilegalmente de bienes muebles pertenecientes a otra, sustrayéndolos de su inmediata presencia y en contra de su voluntad, con violencia o intimidación. Asimismo, cometía dicho delito quien se apropiara ilegalmente de bienes muebles e inmediatamente después de cometer el hecho, empleara violencia o intimidación para retener la cosa apropiada. *Íd.*

Un elemento distintivo del robo era la utilización de la violencia o intimidación y la sustracción o la retención del bien en presencia inmediata y contra la voluntad del sujeto pasivo. D. Nevares Muñiz, *Nuevo Código Penal de Puerto Rico*, Ed. Instituto para el Desarrollo del Derecho, Inc., 2005, pág. 258-259. La intimidación o violencia debía ser coetánea al desplazamiento del bien o inmediatamente después. *Íd.*, pág. 259.

Es menester destacar que el delito no se reduce a apropiación ilegal por la ausencia de lesión o peligro u oportunidad del sujeto pasivo para resistir la violencia. *Íd.*, pág. 258. Pues, el uso de la fuerza más leve posible era suficiente para la comisión del delito de robo. *Íd.* En tal sentido, "cualquier uso de fuerza o agresión que pueda tener

el efecto de lograr que una persona se desprenda de los bienes de su pertenencia o de los que tiene en su posesión es suficiente para constituir la violencia requerida por el delito de robo". *Íd.* Véase *Pueblo v. Batista Montañez*, 113 DPR 307, 314 (1982); *Pueblo v. Díaz Díaz*, 102 DPR 535, 539 (1974). A su vez, el hecho de devolver el bien objeto del robo no impide que el delito se configure. *Íd.*, pág. 260.

### G. <u>Robo agravado</u>

El delito de robo alcanzaba su tipo agravado de segundo grado cuando el sujeto activo se valía de un menor de dieciocho (18) años o el bien objeto del delito fuese un vehículo de motor. Art. 199 del Código Penal de 2004, *supra*, sec. 4827. Ahora bien, cuando en el curso de cometer el delito de robo se infligía daño físico al sujeto pasivo o el delito se cometía en un edificio residencial ocupado por el sujeto pasivo, se incurría en delito grave de segundo grado severo. *Íd.* La responsabilidad penal de esta modalidad agravada del robo es independiente de la que tenga el sujeto activo por otros delitos en el curso de la conducta. D. Nevares Muñiz, *op. cit.*, pág. 261.

### H. <u>Portación y uso de armas de fuego sin licencia</u>

El Artículo 5.04 de la Ley de Armas, *supra*, sec. 458c, tipificaba el delito de portación y uso de armas de fuego sin licencia y disponiendo que incurría dicho delito grave, toda persona que transportara cualquier arma de fuego o parte de esta, sin poseer licencia de armas o portarla sin el correspondiente permiso para portar armas. A saber, el elemento esencial del delito es la ausencia de autorización para portar armas. *Pueblo v. Negrón Nazario*, 191 DPR 720, 752 (2014). El propósito del Artículo 5.04 de la Ley de Armas, *supra*, sec. 458c, fue especificar las consecuencias penales de incumplir con el esquema de licenciamiento y permiso para la portación y el uso de un arma de fuego. *Pueblo v. Rodríguez López et al.*, 210 DPR 752, 765 (2022).

La pena de reclusión por dicho delito era por un término fijo de diez (10) años a cumplirse en su totalidad en años naturales, sin derecho a disfrutar de sentencia suspendida, salir en libertad bajo palabra, programas de desvío, bonificaciones o alternativas a la reclusión. *Íd.* No obstante, de mediar circunstancias agravantes, la pena fija podía aumentarse hasta un máximo de veinte (20) años y de mediar circunstancias atenuantes, podía reducirse hasta un mínimo de cinco (5) años. *Íd.* Una de las circunstancias agravantes de este delito es que el arma ilegal se utilizara en la comisión de cualquier delito o su tentativa. *Íd.*

## I. **Disparar o apuntar armas**

Por último, el Artículo 5.15 de la Ley de Armas, *supra*, sec. 458n, establecía que incurría en delito grave de disparar o apuntar armas, toda persona que, salvo en caso de defensa propia o de terceros o actuaciones en el desempeño de funciones oficiales o actividades legítimas de deportes, voluntariamente disparara cualquier arma en un lugar público o cualquier otro sitio, aunque no le causara daño a persona alguna, o intencionalmente, aunque sin malicia, apuntara hacia alguna persona con un arma, aunque no le causara daño a persona alguna. La pena de reclusión por dicho delito era por un término fijo de cinco (5) años a cumplirse en su totalidad en años naturales, sin derecho a disfrutar de sentencia suspendida, salir en libertad bajo palabra, programas de desvío, bonificaciones o alternativas a la reclusión. *Íd.* Sin embargo, de mediar circunstancias agravantes, la pena fija podía aumentarse hasta un máximo de diez (10) años y de mediar circunstancias atenuantes, podía reducirse hasta un mínimo de un (1) año. *Íd.* Una circunstancia agravante de este delito es utilizar el arma ilegal en la comisión de un delito o su tentativa. *Íd.*

A la luz de la normativa jurídica antes expuesta, procedemos a resolver.

**IV.**

En el presente caso, un jurado encontró culpable al señor Sánchez Pérez por los delitos de robo, robo agravado, portación y uso de armas de fuego sin licencia y disparar o apuntar armas, mediante un veredicto mayoritario de once (11) de los doce (12) miembros de dicho cuerpo. Por otro lado, dicho jurado emitió un veredicto de culpabilidad por unanimidad por el delito de agresión grave. Inconforme con la convicción y la sentencia, el apelante nos planteó que la prueba de cargo presentada en su contra no derrotó su presunción de inocencia, por lo que entendió que no se estableció su culpabilidad por los delitos imputados, más allá de duda razonable.

A su vez, como primer planteamiento de error de derecho, el apelante esbozó que el proceso de identificación mediante la rueda de identificación de voces estuvo matizado de errores y se desvió de la normativa jurídica. Sostuvo que los cinco (5) participantes expresaron la siguiente expresión: "Me encontraba en la gallera jugando mi gallo y le dije a todos ese es mi gallo, tírale, tírale, ganamos, recoge los chavos". En tal sentido, el señor Sánchez Pérez manifestó que se debió evitar el uso de las palabras o sonidos emitidos durante los hechos delictivos, por lo que en la rueda de identificación de voces no se debió utilizar la palabra "chavos", la cual se pronunció durante los hechos delictivos. A su vez, arguyó que las edades de los participantes eran dispares, sin considerar que el apelante poseía veintidós (22) años de edad al momento de la identificación. Por otra parte, especificó que la descripción de la voz era vaga y que nunca se estableció que la voz del perpetrador de los hechos delictivos era de una persona joven.

Como segundo planteamiento de error de derecho, el apelante expresó que la norma pautada en *Ramos v. Louisiana, supra,* y *Pueblo v. Torres Rivera II, supra,* era extensiva a las sentencias apeladas, puesto que no fue declarado culpable unánimemente. Sobre el

particular, el Procurador se allanó a solicitar la celebración de un nuevo juicio sobre los cargos por los cuales el señor Sánchez Pérez se le encontró culpable mediante un veredicto mayoritario.

Por su parte, en su petición de *certiorari*, el Procurador señaló que el TPI erró al rehusarse a corregir una sentencia ilegal, ya que las penas impuestas al señor Sánchez Pérez se impusieron de forma concurrente y sin duplicarse, en contravención con el Artículo 7.03 de la Ley de Armas, *supra*, sec. 460b.

Como cuestión de umbral, nos corresponde evaluar las alegaciones de insuficiencia de la prueba, previo a considerar si procede un nuevo juicio de conformidad con lo resuelto en *Ramos v. Louisiana, supra*, y *Pueblo v. Torres Rivera II, supra*.

Tras un examen sosegado de la totalidad del expediente ante nuestra consideración, concluimos que el Ministerio Público cumplió con su responsabilidad de demostrar más allá de duda razonable cada uno de los elementos constitutivos de los delitos imputados al señor Sánchez Pérez. A saber, de la TPO emanó que la investigación realizada por el agente Román Ríos arrojó que en horas de la noche del 18 de enero de 2010, el señor Sánchez Pérez se encontraba jugando billar con los otros dos (2) sospechosos de los hechos delictivos objetos de este recurso y con los perjudicados en el cafetín *La Curva*, ubicado en el barrio Piletas Arce de Lares. De la investigación resultó que, al momento de jugar billar, el apelante vestía una camisa negra con un logo blanco, un pantalón corto oscuro, una gorra y un pañuelo negro debajo de la gorra. Surgió que los tres (3) sospechosos de los hechos delictivos salieron del cafetín y cuando el señor Rodríguez López cerró el negocio junto a los señores Ramírez Arocho y Crespo Rodríguez, el apelante y el sospechoso identificado como *Chayanne* se bajaron con los rostros cubiertos y con armas de fuego de una guagua *estilo pick* color verde oscuro, anunciando un asalto con el propósito de obtener dinero. Acto

seguido, el señor Sánchez Pérez disparó en una ocasión en el muslo izquierdo del señor Ramírez Arocho, le apuntó con el arma de fuego en la cara y le peticionó dinero. Surge que, dado que el señor Ramírez Arocho carecía de dinero, el apelante le apuntó con el arma de fuego a los otros dos (2) perjudicados. Por otro lado, el sospechoso identificado como *Chayanne* le disparó en dos (2) ocasiones al señor Crespo Rodríguez y le quitó $1.00. En ese momento, el señor Rodríguez López entregó $400.00 para evitar que le dispararan. Tras dicho evento, el señor Ramírez Arocho tuvo que recibir tratamiento hospitalario por el sangrado producto de la herida de bala y permaneció convaleciente por dos (2) meses, en los que requirió que su madre y esposa lo asearan. Igualmente, el señor Crespo Rodríguez tuvo que ser operado como producto de la fractura en el fémur por las heridas de bala. Durante la investigación, el señor Ramírez Arocho identificó al señor Sánchez Pérez por la voz en una rueda de identificación de voces realizada el 23 de febrero de 2010, así como las características físicas y vestimenta utilizada el día en que se cometió los hechos delictivos. En este sentido, expresó que el apelante estaba vestido igual que al momento en que jugaba billar, excepto que tenía la camisa negra con el logro blanco a la inversa.

Al ponderar sobre el delito de agresión grave, Art. 121 del Código Penal de 2004, *supra*, sec. 4749, en los hechos delictivos objetivo de este recurso, concluimos que se configuraron todos los elementos del delito. Es decir, el señor Sánchez Pérez, actuando en común y mutuo acuerdo con otras personas, ilegalmente, le causó una lesión a la integridad corporal de los señores Ramírez Arocho y Crespo Rodríguez mediante disparo con un arma de fuego. Dicha lesión requirió que ambos perjudicados recibieran hospitalización y tratamiento prolongado.

Por otro lado, en lo atinente al delito de robo, según tipificado en el Artículo 198 del Código Penal de 2004, *supra*, sec. 4826, el

apelante, actuando en común y mutuo acuerdo con otras personas, se apropió ilegalmente de $400.00 pertenecientes al señor Rodríguez López, $1.00 perteneciente al señor Crespo Rodríguez e, infructíferamente, intentó apropiarse del dinero del señor Ramírez Arocho, sustrayéndolos en su inmediata presencia y en contra de su voluntad, mediante el ejercicio de la violencia a través de dispararles y apuntarles con un arma de fuego. A su vez, se configuró el delito de robo agravado de segundo grado severo dado que el señor Sánchez Pérez, actuando en común y mutuo acuerdo con otras personas, les infligió daño físico a los señores Ramírez Arocho y Crespo Rodríguez en el curso de cometer el delito de robo, según se dispone en el Artículo 199 del Código Penal de 2004, *supra*, sec. 4827. Es norma trillada que cualquier uso de la fuerza o agresión que tenga el efecto de lograr que una persona se desprenda de sus bienes muebles es suficiente para que se constituya la violencia requerida para que se suscite el delito de robo. Véase D. Nevares Muñiz, *op. cit.*, pág. 258; *Pueblo v. Batista Montañez, supra; Pueblo v. Díaz Díaz, supra.*

En lo concerniente al delito de portación y uso de armas de fuego sin licencia, según tipificado en el Artículo 5.04 de la Ley de Armas, *supra*, sec. 458c, del expediente ante nos surgió que el señor Sánchez Pérez, portó y utilizó un arma de fuego para la comisión de varios delitos, sin poseer licencia de armas o el correspondiente permiso para portar armas.

Por último, se configuraron los elementos del delito de disparar o apuntar armas, tipificado en el Artículo 5.15 de la Ley de Armas, *supra*, sec. 458n. Esto, puesto que el Ministerio Público demostró más allá de duda razonable que el apelante, actuando en común y mutuo acuerdo con otras personas, voluntariamente les disparó a los señores Ramírez Arocho y Crespo Rodríguez en un lugar público, más le apuntó a los tres (3) perjudicados con un arma de fuego con el propósito de cometer el delito de robo.

En definitiva, la prueba de cargo desfilada fue suficiente en derecho para establecer la culpabilidad del señor Sánchez Pérez más allá de duda razonable por cada cargo. Por lo anterior, concluimos que el reclamo de insuficiencia de la prueba resulta inmeritorio. Por ello, procede atender los errores de derecho planteados ante nos.

Como primer error de derecho, el apelante planteó que el proceso de la rueda de identificación de voces se desvió de la normativa jurídica. Tras un análisis de la totalidad de las circunstancias que mediaron la identificación del señor Sánchez Pérez y las particularidades de este caso, concluimos que no le asiste la razón al apelante. En este caso, la rueda de identificación de voces se celebró el 23 de febrero de 2010, alrededor de un mes posterior a que ocurrieran los hechos delictivos. En la misma, el señor Ramírez Arocho, quien es músico de profesión y tuvo oportunidad de escuchar a los perpetradores de los delitos, reconoció un timbre particular e identificó la voz del señor Sánchez Pérez como uno de los sospechosos. Al analizar los audio visuales del aludido método de identificación, encontramos que la rueda de identificación de voces fue libre, espontánea y confiable. A saber, participaron cinco (5) personas, incluyendo al apelante; el señor Ramírez Arocho no observó los componentes de la rueda, no se presentó prueba de que el señor Ramírez Arocho se haya comunicado con otros testigos durante el proceso, más, se grabaron las voces para que este foro revisor pudiera considerar la existencia de algún factor sugestivo. A su vez, se les colocó una mascarilla a los cinco (5) participantes para que las voces se aproximaran a las escuchadas durante los hechos delictivos, debido a que los perpetradores se cubrieron el rostro de la nariz hacia abajo. Resulta forzoso concluir que el uso de la palabra "chavos" no vició el método de identificación ni fue un factor sugestivo que maculara la rueda. Además, la rueda de identificación de voces no fue el único método por el que se identificó al señor Sánchez Pérez

como sospechoso de los hechos delictivos que nos conciernen. Ello, debido a que el señor Ramírez Arocho reconoció al apelante por su indumentaria y sus características físicas. Cabe señalar que, aunque el señor Sánchez Pérez no era conocido personalmente por los perjudicados, era reconocido por estos, dado que vivía en el barrio donde ocurrieron los hechos delictivos; jugó billar con los tres (3) perjudicados en momentos previo a los hechos delictivos, más poseía la misma ropa, gorra, pañuelo negro debajo de la gorra, camisa negra con un logo blanco y un pantalón corto oscuro que utilizó al momento de jugar billar, con excepción de la camisa que estaba invertida.

Por otro lado, como segundo error de derecho, el apelante estableció que procede celebrarse un nuevo juicio dado que los veredictos de culpabilidad por ciertos delitos no fueron emitidos unánimemente por el jurado. A este respecto, resulta importante puntualizar que el señor Sánchez Pérez ejerció su derecho de que el juicio en su contra se celebrara por un jurado imparcial. El jurado lo encontró culpable por todos los delitos. No obstante, el veredicto de culpabilidad por los delitos de robo, robo agravado, portación y uso de armas de fuego sin licencia y disparar o apuntar armas, se emitió mayoritariamente, a razón de once (11) a uno (1). Ante tal circunstancia, le es aplicable la normativa de *Ramos v. Louisiana, supra*, y *Pueblo v. Torres Rivera II, supra*. Ello, debido que al dictarse las Reconsideraciones de Sentencias, tuvo el efecto de que las mismas no fueran finales. Así, pues, procede que ordenemos la celebración de un nuevo juicio para el cargo por robo, los dos (2) cargos por robo agravado de segundo grado, el cargo por portación y uso de armas de fuego sin licencia y los tres (3) cargos por disparar o apuntar armas. Esto no es aplicable a los dos (2) cargos por el delito de agresión grave de tercer grado, en los cuales fue encontrado culpable mediante un veredicto unánime.

Así resuelto el primer asunto ante nuestra consideración, declinamos ejercer nuestra jurisdicción para revisar los errores planteados por el Procurador en el recurso de *certiorari*, ya que los mismos resultan ser prematuros debido al resultado antes anunciado.

**V.**

Por los fundamentos antes expuestos, se dejan sin efecto las sentencias apeladas, excepto aquellas en las que se alcanzó veredicto unánime, se ordena la celebración de un nuevo juicio y se devuelve el caso al TPI para que continúe con los procedimientos, de conformidad con lo aquí resuelto.

De otra parte, se deniega la expedición del auto de *certiorari* solicitado por la Oficina del Procurador General.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones